In the Matter of the Arbitration Proceeding Between ARROWHEAD PUBLIC SERVICE UNION (John McBride and Gary Meier, grievants), Appellant,

v.

CITY OF DULUTH, Respondent,

and

ARROWHEAD PUBLIC SERVICE UNION, Appellant,

v.

CITY OF DULUTH, Respondent.

Nos. CX–82–219, C8–82–221.

Supreme Court of Minnesota.

July 8, 1983.

Falsani, Balmer & Berglund and Daniel C. Berglund, Duluth, for appellant.

William P. Dinan, City Atty., and Bryan F. Brown, Asst. City Atty., Duluth, for respondent.

COYNE, Justice.

Appellant Arrowhead Public Service Union appeals from orders of the St. Louis County District Court vacating the awards of arbitrators who had, in two separate arbitration proceedings, reinstated three employees whom the City of Duluth had laid off because of budget reductions. We affirm in part and reverse in part and remand to the district court with direction to order rehearing before the arbitrators who made the respective awards.

*The Conlan Case:* Michael Conlan was the manager of the Human Services Division of the Personnel Department of the City of Duluth. On April 9, 1981, the City notified Conlan that, effective April 19, 1981, he was to be laid off because of budget reductions. On May 4, 1981, Arrowhead Public Service Union (Union), which represents supervisory employees pursuant to the Public Employees Labor Relations Act (PELRA), Minn.Stat. §§ 179.61–179.76 (1982), grieved on behalf of Conlan. The Union contended that the lay-off was not "necessary" and was, therefore, improper under the City's collective bargaining agreement with the Union and that the City had violated the contractual procedures applicable to the lay-off of classified employees.

Arbitrator Sheldon D. Karlins determined that the collective bargaining agreement required a showing of financial necessity for the termination of an employee covered by the agreement, that the City had not proved such necessity, and that Conlan was entitled to reinstatement with back pay. The arbitrator expressed doubt that the City had followed the lay-off procedures provided by the contract but, in view of his determination that Conlan should be reinstated, found it unnecessary to address that question.

On the City's motion the district court ordered the award vacated on the ground that the arbitrator exceeded his powers in ordering reinstatement.

*The McBride-Meier Case:* John McBride and Gary Meier were, respectively, manager of youth programs and program administrator for training and development in the City's CETA program. On May 1, 1981, McBride and Meier were informed by letter that, effective May 11, 1981, they were to

be laid off because of financial necessity. On May 25, 1981, the Union grieved these lay-offs, asserting essentially the same grounds as in the Conlan grievance.

On the ground that the City had failed to prove absolute financial necessity, the arbitrator, John J. Flagler, sustained the grievance and awarded McBride and Meier back pay through September 30, 1981, the end of the CETA contract year. Since, however, the arbitrator's award was issued after the close of the contract year, he did not order reinstatement of the grievants. Because he had sustained the grievance, the arbitrator regarded the alleged violation of the contractual lay-off procedures as moot and did not reach that issue.

Again the City moved for vacation of the award, and the district court vacated the award on the ground that the Union was collaterally estopped, by reason of the earlier order in the Conlan case, from arbitrating the question of financial necessity.

■ Historically, labor disputes affecting private sector employees have been resolved by arbitration, but until the adoption of the Public Employees Labor Relations Act of 1971 (PELRA), Minn.Stat. §§ 179.61 to 179.76, arbitration was considered to be unavailable for the disposition of public sector employee grievances. *See In re Discharge of Johnson,* 288 Minn. 300, 180 N.W.2d 184 (1970). The authority and procedure for judicial interference with the arbitration process under a public sector, as well as a private sector, collective bargaining agreement is, however, governed by the Uniform Arbitration Act, codified as Minn.Stat. ch. 572 (1982). *State v. Berthiaume,* 259 N.W.2d 904 (Minn.1977). Hence, whether the arbitrability of a grievance is raised in proceedings to compel or stay arbitration pursuant to Minn.Stat. § 572.09 (1982) or in proceedings to vacate an award pursuant to § 572.19, subd. 1, on the ground that the arbitrator exceeded his powers, the court is not bound by the arbitrator's determination of arbitrability: the issue is to be resolved, as it was here, by an independent judicial determination. *Berthiaume,* 259 N.W.2d at 909–10.

We have consistently held that arbitrability is to be determined by ascertaining the intention of the parties from the language of the agreement itself. *Minnesota Federation of Teachers, Local 331 v. Independent School District No. 361,* 310 N.W.2d 482 (Minn.1981); *City of Brooklyn Center v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320,* 271 N.W.2d 315 (Minn.1978). Article IV of the agreement between the City and the Union reserved to the City "except as expressly modified by this Agreement" all rights and authority necessary for the direction and administration of the City's affairs, including statutorily defined inherent managerial rights and the right to plan and control the City's operation and to determine the organization and number .of personnel by which its operations are to be conducted.[1] Article XXX prescribes the

---

1. The full text of Article IV follows:

The Employer and Union recognize and agree that *except as expressly modified in this Agreement,* the Employer has and retains all rights and authority necessary for it to direct and administer the affairs of the Employer and to meet its obligations under federal, state and local law, such rights to include, but not be limited to, the rights specified in Minnesota Statutes, 1971, Section 179.66, Subd. 1; the right to direct the working forces; to plan, direct and control all the operations of the Employer; to determine the methods, means, organization and number of personnel by which such operation and services are to be conducted; to contract for services; to assign and transfer employees; to make and enforce reasonable rules and regulations; to change or eliminate existing methods of operation, equipment or facilities; to schedule working hours.

(emphasis added). Minn.Stat. § 179.66, subd. 1 (1982) in turn defines the statutory managerial rights on which a public employer need not negotiate:

Subdivision 1. A public employer is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel. No public employer shall sign an agreement which limits the right of the public employer to select persons to serve as supervisory employees or state managers

lay-off procedures applicable "[w]hen it becomes necessary, through lack of work or funds, [or] for other causes for which an employee is not at fault, to reduce the number of employees within a department * * *."[2] Finally, provision for the arbitration of grievances is set out at Article XXXIV of the agreement, as are the limits of the arbitrator's powers.[3]

▮ Without question decisions concerning a city's budget, its programs and organizational structure, and the number of personnel it employs to conduct its operations are matters of policy. Minn.Stat. § 179.66, subd. 1 (1982). *Minneapolis Association of Administrators and Consultants v. Minneapolis Special School District No. 1,* 311 N.W.2d 474 (Minn.1981); *Minneapolis Federation of Teachers, Local 59 v. Minne-* *apolis Special School District No. 1,* 258 N.W.2d 802 (Minn.1977). While a public employer must negotiate terms and conditions of employment, § 179.66, subd. 2, it is not required to negotiate matters of inherent managerial policy although it may do so voluntarily. *Minnesota Arrowhead District Council 96 of American Federation of State, County and Municipal Employees v. St. Louis County,* 290 N.W.2d 608, 611 (Minn. 1980). When, however, a public employer negotiates matters of inherent managerial policy which it has no obligation to negotiate and thereby relinquishes the right to determine policy with respect to its budget, its organizational structure, and the number of personnel it should employ, the public employer—like the collective bargaining representative which waives the statutory

pursuant to section 43.127 or requires the use of seniority in their selection.

2. Article XXX provides as follows:

1. When it becomes necessary, through lack of work or funds, for other causes for which an employee is not at fault, to reduce the number of employees within a department, the following procedures shall apply:

a. All CETA employees within the city shall be laid off first.

b. All temporary, all non-classified provisional, and substitute employees shall be the next to be laid off within a department.

c. Permanent employees who are substituting for a vacant position shall, during any lay-off, return to their permanent position.

d. Permanent employees who are promoted provisional shall, during any layoff, return to their former permanent position.

e. *Bumping:* When an employee is laid-off in such class in the work force, he/she shall be permitted to exercise his/her seniority rights to bump—replace an employee with less seniority. Such employee may, if he/she so desire, bump any employee in a lower job classification provided the bumping employee has greater seniority than the employee whom he/she bumps and shall be accomplished according to the following procedure.

1. Elimination of a position in a job series, other than entry level and where an employee is affected, the following bumping procedure shall apply:

a. The least senior employee(s) in the lowest class in a job series shall be laid off first.

b. Employee(s) in the next higher class shall be given the option to bid on the vacant position(s) by total seniority. If no employee(s) choose to take the lower position, the least senior employee(s) shall be required to fill the lower position. This procedure shall be followed in each higher class until the position which was eliminated is reached.

c. Any employee who is the least senior and who chooses not to take a lower position shall be placed on the re-employment list and the laid-off employee in the class so affected shall be rehired if laid off.

2. Elimination of a position(s) that are not in a job series shall result in the least senior employee(s) being laid-off.

3. Article XXXIV provides, in pertinent part, these limitations:

4. The arbitrator shall have no right to amend, modify, nullify, ignore, add to, or subtract from the provisions of this Agreement. He shall consider and decide only the specific issue(s) submitted to him in writing by the parties, and shall have no authority to make a decision on any other issue not so submitted to him. More than one grievance may be heard by the same arbitrator by mutual agreement of the parties. Either party may, if it desires, submit a brief to the arbitrator setting forth its position with respect to the issue(s) involved in a grievance. The arbitrator shall be without power to make decisions contrary to or inconsistent with or modifying or varying in any way the application of laws and rules and regulations having the force and effect of law. The arbitrator shall submit his decision in writing to the parties and shall file a copy of such decision with the Bureau of Mediation Services of the State of Minnesota. The decision shall be based solely upon his interpretation of the meaning or application of the express terms of this Agreement to the facts of the grievance presented.

right to bargain over a mandatory subject of bargaining—must do so in clear and unmistakeable language. *See General Drivers Union Local 346 v. Independent School District No. 704,* 283 N.W.2d 524, 527 (Minn. 1979).

■ The union contends, and the arbitrators so determined, that the introductory language of Article XXX, "When it becomes necessary, through lack of work or funds, [or] for other causes for which an employee is not at fault, to reduce the number of employees within a department . . .", constitutes an express modification of the City's managerial rights pursuant to Article IV and that the quoted language precludes the City from terminating the employment of an employee without demonstrating financial necessity or lack of work. In the context in which it appears, however, the term "necessary" does not reasonably import any relinquishment of the City's retained inherent managerial authority or discretion. Article XXX prescribes the procedures to be followed in laying off classified employees *when* such action becomes necessary to carry out the policy formulated by the City in the exercise of its inherent managerial function, whether that policy concerns the allocation of the funds available to the City or some other cause for reduction of the number of its personnel, such as lack of work or revision of the City's organizational structure.

Article XXXIV of the contract restricts the arbitrator to decisions based on the provisions of the contract and expressly deprives the arbitrator of power to make decisions contrary to or inconsistent with the law. Minn.Stat. § 179.70, subd. 5 (1982) subjects the arbitration proceeding to the limitations set out in § 179.72, subd. 7, which declares void the determination of any matter except terms and conditions of employment or other items contained in the contract. In the light of the statutory and contractual limitations on the arbitrator's

power, we conclude, as did the trial court, that the arbitrators clearly exceeded their power in determining that financial necessity was an arbitrable issue.

■ The trial court also ruled that the elimination of the position held by Mr. Conlan did not result in a lay-off within the contemplation of Article XXX of the contract. Inasmuch as the arbitrator had not found it necessary to decide whether or not a "lay-off" had occurred or, if so, whether or not the City had followed the proper procedure, that issue was not before the trial court. Article XXX of the negotiated contract sets forth in considerable detail the procedures to be followed in laying off classified employees, and Article XXXIV authorizes the arbitration of grievances with respect to matters contained in the contract. Furthermore, the City does not challenge the arbitrability of the lay-off procedures; it simply contends that the procedures are inapplicable in these cases. Questions, however, of the applicability of and compliance with the procedures prescribed by the contract are matters peculiarly within the arbitrator's power. Accordingly, we conclude that the trial court erred in determining that the lay-off procedures were inapplicable. On remand, the district court is instructed to order rehearing before the arbitrators who made the respective awards for the purpose of determining the applicability of and, if applicable, whether or not there was compliance with the lay-off procedures provided in Article XXX of the contract.

Affirmed in part, reversed in part, and remanded with directions.