**CLOQUET EDUCATION ASSOCIATION, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 94, CLOQUET, Minnesota, Respondent.**

**No. C6-83-356.**

Supreme Court of Minnesota.

Feb. 24, 1984.

John R. Tunheim, St. Paul, for appellant.

Paul W. Hetland, Susan J. Schoell, St. Paul, for respondent.

TODD, Justice.

The Cloquet Education Association (Union), the teachers' certified "exclusive representative" under the Public Employment Labor Relations Act, Minn.Stat. §§ 179.61 to 179.76 (1982) (PELRA), brings this action against Independent School District No. 94, Cloquet, Minnesota, to compel arbitration. The union contends the school district's unilateral assignment of a teacher to chaperone a senior high dance constituted a change in the terms and conditions of his employment and that the school district was therefore obligated to meet and negoti-ate the matter. The district court concluded the matter was one of "inherent managerial policy" which operates to shield the school district from PELRA's mandatory arbitration provision. We reverse with instructions to enter an order directing the parties to proceed with arbitration.

On October 2, 1981, in response to an apparently insufficient number of volunteer chaperones, Assistant Principal Robert Stevens notified senior high teacher Reon Kinn that he had been assigned to chaperone one senior high dance. On October 14 the union filed a grievance claiming the school district's unilateral action in assigning Mr. Kinn to chaperone the dance violated Article XII, Section 3 [the additional activities provision] of their collective bargaining agreement which provides that any such assignment shall be in accordance with "past practice."

The parties proceeded with the first three steps of the grievance procedure without resolution. Thereafter, the school district refused to proceed, claiming it had "always retained the right to assign teachers to supervision and direction of a wide variety of out-of-class activities." In December 1981, by unanimous resolution, the school district board denied the union's request for a grievance hearing "on the grounds that assignment of personnel is [an] inherent managerial right."

The parties' master contract provides "the terms and conditions of employment" for the teachers for the 1981–1983 school years. The contract in turn defines terms and conditions of employment as "the hours of employment, the compensation therefor, and economic aspects relating to employment, but * * * not * * * educational policies of the school district." The additional activities provision, the core of this dispute, says "[i]t is inevitable that all licensed teaching personnel will have to share in the supervising and directing of a wide variety of out-of-class activities. The duties are inherent in teaching and assignment of such duties shall be in accordance with past practice."

The parties' descriptions of past practice differ substantially. The union claims that the standard and exclusive procedure for securing chaperones for senior high dances "for so long as can be remembered" was that the group sponsoring the dance and the group's advisor would be responsible for securing adult chaperones. Once the chaperones were secured, the building principal would be given the names of the chaperones. If the chaperones were not obtained or if other requirements were not satisfied, the dance would be cancelled. The school district claims past practice consisted of the building principal assigning teachers to chaperone any function when the sponsoring organization was unable to obtain a sufficient number of chaperones.

In accordance with PELRA, the parties' master contract provides for compulsory binding arbitration of grievances. Both PELRA and the parties' master contract define grievance as a dispute or disagreement as to the interpretation or application of agreed upon terms and conditions of employment. *See* Minn.Stat. § 179.70, subd. 6 (1982). In virtually identical language, both PELRA and the parties' master contract expressly exclude matters of inherent managerial policy from the mandatory grievance arbitration requirement. *See* Minn.Stat. § 179.66, subd. 1 (1982). Accordingly, we must determine whether the school district's unilateral assignment of a teacher to chaperone a senior high dance was the exercise of an "inherent managerial right" or a change in a "term and condition of employment." If it was the latter, arbitration was mandatory.

■ In an action to compel arbitration pursuant to the Minnesota Uniform Arbitration Act, Minn.Stat. § 572.08 *et seq.* (1982), the arbitrability issue "is to be determined by ascertaining the intention of the parties from the language of the arbitration agreement itself." *State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977).

Drawing upon the 1963 case of *Layne-Minnesota Co. v. Regents of the University of Minnesota,* 266 Minn. 284, 291, 123 N.W.2d 371, 376 (1963), we delineated as

follows the standard applicable in actions to compel arbitration:

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b] ).

*Atcas v. Credit Clearing Corporation of America,* 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972).

■ Assignment of a teacher to an additional, out-of-class activity clearly affects that teacher's hours of service. Thus we find it comes squarely within the parties' definitions of terms and conditions of employment. In support of this determination we note the additional activities provision is contained in Article XII governing "Hours of Service." Moreover, the parties themselves had treated assignments to additional activities as negotiable during their last three contract negotiation sessions. In those sessions, both parties had proposed revisions to the disputed provision. At all times, the parties were unable to agree upon any revision. Thus, the provision remained unchanged, requiring performance as per "past practice." Because we conclude the assignment of a teacher to an additional out-of-class activity is a term and condition of employment, it necessarily follows that a dispute or disagreement concerning such an assignment constitutes a grievance subject to compulsory binding arbitration. Minn.Stat. § 179.70, subd. 6 (1982).

The school district asserts the disputed action comes within its inherent managerial

right to conduct the operation of the school district. Those asserted rights flow from the parties' contract which provides the school board is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel.

In interpreting what scope is given the word "direction" in the phrase "selection and direction of personnel" we construed this to mean "direction over the broad educational objectives of the entire district." *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1*, 258 N.W.2d 802, 805 (Minn. 1977). Except where implementation is inextricably interwoven with the school district's policy determinations, we have consistently held the criteria and procedure for carrying out the school district's objectives are severable from the inherent managerial policy decision. *See, e.g., Ogilvie v. Independent School District No. 341, Atwater*, 329 N.W.2d 555, 558 (Minn.1983); *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1, supra.* Requiring the school board to meet and negotiate regarding assignment of teachers to additional out-of-class activities is not likely to hamper the school board's direction of educational objectives. *See Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1, supra.*

The district court's denial of the motion to compel arbitration is reversed and we remand with instructions to enter an order directing the parties to proceed with arbitration.

PETERSON, Justice (concurring).

The parties have a collective bargaining agreement, one term of which provides that "out-of-class activities" shall be assigned "in accordance with past practice" and another term of which provides that a disagreement as to the interpretation or application of a term of the collective bargaining agreement shall be subject to a grievance procedure, including binding arbitration. The trial court undertook to make a determination as to the existence and effect of any past practice. That determination plainly is for an arbitrator, not the court, to make. It is as simple as that.

I concur in reversing the trial court and remanding with instructions to order the parties to proceed to arbitration.

SIMONETT, Justice (concurring).

I join Justice Peterson's concurrence.

KELLEY, Justice (concurring).

I join the concurring opinion of Justice Peterson.