In the Matter of Arbitration Between METROPOLITAN AIRPORTS COMMISSION, Petitioner, Appellant,

v.

METROPOLITAN AIRPORTS POLICE FEDERATION, Respondent.

No. C9–88–1777.

Supreme Court of Minnesota.

July 28, 1989.

As Amended Sept. 18, 1989.

Donald Selzer, Jr., Randall J. Pattee, Oppenheimer, Wolff & Donnelly, St. Paul, for petitioner, appellant.

Stephen Gordon, Stephen Befort, Gordon–Miller–O'Brien, Minneapolis, for respondent.

Gregg Corwin, Linda Nelson, Gregg Corwin & Associates, St. Louis Park, for amicus.

POPOVICH, Chief Justice.

We granted Metropolitan Airport Commissions's (MAC) petition for discretionary review of a trial court judgment vacating an arbitration award after the court of appeals denied discretionary review and dismissed the appeal as nonappealable. We now reverse the trial court judgment and reinstate the arbitrator's award.

## I.

The underlying dispute between the parties involves the interpretation of the collective bargaining agreement between MAC and the Metropolitan Airports Police Federation (Federation). The agreement includes a grievance procedure which provides for arbitration of grievances which cannot be resolved by mutual agreement between the parties. An arbitrator selected by the parties is to consider the grievance in light of the agreement and may not amend, modify, nullify, ignore, add to or subtract from the provisions of the agreement. The relevant provision to this dispute, Article 7.81, provides that employees in the bargaining unit will have the first opportunity for all "law enforcement work normally performed by the employees of the bargaining unit."

Prior to 1981, dispatchers, clerical personnel and supervisors were in the same bargaining unit as police officers. In 1981 a unit clarification decision by the Minnesota Bureau of Mediation Services limited the bargaining unit to police officers. Thereafter, administrative control over dispatchers was gradually transferred to the MAC administrator. Because the communication center where the dispatchers worked was located in the police department office, the head of the police department still scheduled the dispatchers for work and police officers relieved dispatchers when they went on meal or bathroom breaks if no other dispatcher was available. Police officers were also used to perform dispatcher duties when dispatchers were on sick leave, emergency leave, vacation or holidays if

other dispatchers were not available to substitute. Other employees also performed relief dispatcher duties but less frequently than did police officers. Between November 1982 and February 1984, relief dispatcher work made up approximately 1.446% of all police officer work time.

In February 1984 MAC announced its plan to physically relocate the communication center. The first step was to make the dispatcher's unit more self-sufficient. MAC adopted a new policy for the scheduling of substitute dispatchers under which other dispatchers were asked to substitute first on a voluntary basis. If no dispatcher was available, police supervisory personnel were to substitute and only if no supervisory officer was available was a police officer to be assigned relief dispatcher work. After the policy change, police officers were used for substitute dispatcher work less than 1% of all police officer work time.

In November 1984 the dispatchers and most of the communication center equipment were relocated to another space in the airport terminal. Certain alarm systems, an emergency phone, a console radio, a computer and some paging equipment remained in the police department office until mid-May 1985. Supervisory police personnel or clerical personnel were assigned the responsibility of monitoring the remaining equipment because their work station was located near the equipment.

This assignment of non-unit members to monitor the remaining dispatcher equipment became the subject of the grievance brought by the Federation. The Federation claimed MAC's decision not to assign bargaining unit members for that work violated the provision of the collective bargaining agreement which required the employer to "provide employees in the unit the first opportunity for all law enforcement work normally performed by the employees of the bargaining unit." It sought damages in excess of $70,000 for wages which would have been paid had the work been assigned to members of the bargaining unit.

After a five-day hearing the arbitrator concluded the substitute dispatcher work which the Federation claimed should have been assigned to bargaining unit members was neither "law enforcement work" nor work "normally performed by members of the bargaining unit." Rather, the arbitrator found, the work belonged to another job classification outside the bargaining unit and therefore MAC was not bound to meet and negotiate with the Federation before assigning it. Because the arbitrator determined the assignment of the work in question was not covered by the collective bargaining agreement, he necessarily determined the grievance was not arbitrable.

The Federation subsequently commenced this action alleging the arbitrator had exceeded his authority and also moved for summary judgment. The district court ordered summary judgment, vacated the arbitrator's award and remanded the matter for rehearing before another arbitrator. MAC filed a petition for discretionary review in the court of appeals after the trial court issued its order and, after judgment was entered, also filed a notice of appeal. The court of appeals first denied discretionary review and later dismissed the appeal on the basis the judgment was not appealable.

## II.

The preliminary issue for us to resolve is whether a trial court judgment vacating an arbitrator's award and remanding for new arbitration can be appealed. The Minnesota Arbitration Act sets forth the rules and procedures for arbitration. Court involvement in arbitration is specifically limited to compelling or staying arbitration, Minn. Stat. § 572.09; appointing arbitrators where necessary, Minn.Stat. § 572.10; confirming awards, Minn.Stat. § 572.18; vacating or modifying awards, Minn.Stat. § 572.19 and 572.20; and enforcing awards through entry of judgment, Minn.Stat. § 572.22. The Act also provides:

Subdivision 1. An appeal may be taken from:

(1) An order denying an application to compel arbitration made under section 572.09;

(2) An order granting an application to stay arbiration made under section 572.-09(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this chapter.

Minn.Stat. § 572.26, subd. 1 (1988).

The judgment MAC appealed from vacated the arbitrator's award but also ordered rehearing; therefore, it is not appealable pursuant to Minn.Stat. § 572.26, subd. 1(5). MAC argued it was a judgment entered pursuant to the provisions of Chapter 572. However, the only judgments authorized by Chapter 572 are judgments on orders confirming, modifying or correcting an award. Minn.Stat. § 572.21 (1988). Because the judgment entered by the trial court in this case did none of those things, it appears this judgment should never have been entered by the trial court.

MAC also argued the judgment was appealable under Minn.R.Civ.App.P. 103.-03(a), which provides an appeal may be taken to the court of appeals from a judgment entered in the trial court. Here, judgment was entered by the trial court at the Federation's request, but the matter was also remanded for another hearing. The Federation argues that because rehearing was ordered the judgment was not final and therefore not appealable. Because we accept jurisdiction on another basis, we need not decide whether the judgment was appealable under the appellate rules. We note, however, there is a substantial question as to the validity and appealability of the judgment in this case and we remind trial courts that judgments on arbitration matters should be entered only as provided by the arbitration act.

Article VI, Section 2 of the Minnesota Constitution provides:

The supreme court * * * shall have original jurisdiction in such remedial cases as are prescribed by law, and *appellate jurisdiction in all cases*, but there shall be no trial by jury in the supreme court.

(Emphasis supplied.) Similarly, the court of appeals has appellate jurisdiction "over all courts, except the supreme court, and other appellate jurisdiction as prescribed by law." Minn. Const. art. VI, § 2.

While appellate review "as of right" is purely statutory, this court has the independent power to review any case. *In re O'Rourke*, 300 Minn. 158, 169, 220 N.W.2d 811, 818 (1974). The legislature in providing judicial appeals cannot deny this court its constitutionally independent appellate authority to review whatever case it deems necessary in the interests of justice even if "statutory provisions, case law or the Rules of Civil Appellate Procedure might otherwise preclude appellate review." *State v. M.A.P.*, 281 N.W.2d 334, 337 (Minn.1979). Thus, regardless of whether the judgment entered by the trial court in this case was appealable under the arbitration act or the appellate rules, both this court and the court of appeals have the authority to accept jurisdiction if either court deems the interests of justice so warrant.

The court of appeals chose not to exercise its discretionary authority. The court of appeals' decision not to grant discretionary review, however, does not affect this court's independent constitutional authority to review any matter. To avoid any further delay and because we find this case to be one which warrants exercise of our discretionary authority, we undertake review on that basis.

### III.

The real question presented is whether the trial court abused its discretion in vacating the arbitrator's award on the ground the arbitrator exceeded his authority. Because the court of appeals dismissed the appeal, it did not rule on the question. We hold the trial court erred in vacating the award because it applied the wrong test for reviewing the arbitrator's decision, and we reinstate it.

A district court is authorized to vacate an arbitration award if the arbitrator exceeded his powers. Minn.Stat. § 572.19, subd. 1(3) (1988). When reviewing an arbitrator's determination about the arbitrability of a grievance, the trial court makes an independent judicial determination and is not bound by the arbitrator's determination on the merits. *Arrowhead Public Service Union v. City of Duluth*, 336 N.W.2d 68, 70 (Minn.1983). As to the merits of a dispute, however, the arbitrator is to be the final judge of both law and fact. *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977). Where the decision is being challenged on the merits, an award cannot be vacated if it draws its "essence" from the contract and can "in some rational manner be derived from the agreement." *Ramsey County v. AFSCME, Council 91, Local 8*, 309 N.W.2d 785, 792 (Minn.1981).

MAC claimed the trial court should have used the "essence test" in its consideration of the matter because the arbitrator had to consider the merits of the dispute in order to resolve the arbitrability question presented by this case. We agree. Because the issue of arbitrability is inextricably intertwined with the merits of the dispute, the arbitrator's decision was a decision on the merits and must be confirmed because it draws its essence from the collective bargaining agreement.

The Federation claimed MAC violated the collective bargaining agreement by assigning the relief dispatcher duties to non-unit members. Therefore, the arbitrator had to decide whether the dispatcher functions were covered by the agreement or if they belonged to another bargaining unit. If he found the dispatcher functions were unit work, the subject of the grievance would be covered by the collective bargaining agreement, the dispute would be arbitrable and the Commission would lose on the merits for not having negotiated about work assignment. If he found the work was not unit work and not covered by the agreement, reassignment of it would be within the inherent management rights of the employer, the grievance would not be arbitrable and the Federation would lose on the

merits. In other words, the arbitrability decision could not be made without first deciding the merits of the dispute.

To determine whether an issue is arbitrable, the agreement language must be examined to ascertain what issues the parties intended to make bargainable. *Arrowhead Public Service Union*, 336 N.W.2d at 70. If an issue is bargainable, it is grievable and therefore arbitrable. *See Cloquet Education Assoc. v. Independent School District No. 94*, 344 N.W.2d 416 (Minn.1984). When construing a collective bargaining agreement an arbitrator may look to sources other than those which a court would consider, such as the parties' relationship, practices of the industry, history of the agreement and other factors. *Ramsey County*, 309 N.W.2d at 791. By doing so, the arbitrator can determine the "essence" of the agreement.

Here, the arbitrator considered such factors in examining the facts relevant to the issue of arbitrability. The arbitrator decided the subject work was not law enforcement work normally performed by unit members for the following reasons: unit members spent a comparatively small amount of time performing relief or substitute dispatch functions; the work was not law enforcement work "per se"; the unit members only performed a few of the duties of a dispatcher; and the original intent of the agreement was to protect unit members from contracting out police work. The arbitrator concluded the relatively small amounts of time which unit members spent working out of classification did not give them a vested right in having the non-unit work be continually assigned to them. The decision draws its "essence" from the agreement.

The Federation also argued MAC was obligated to bargain before assigning the substitute dispatcher work under the Public Employment Labor Relations Act (PELRA), Minn.Stat. § 179A.07, subd. 2 (1988), which requires employers to negotiate matters which affect the terms and conditions of employment.[1] Employers are

not required, however, to negotiate matters of inherent managerial policy although an employer may do so voluntarily. *Minnesota Arrowhead District Council 96 of AFSCME v. St. Louis County,* 290 N.W.2d 608, 611 (Minn.1980); Minn.Stat. § 179A.07, subd. 1 (1988). Assignment of work which is not unit work does not affect the terms and conditions of unit members' employment. The arbitrator's decision did not make the work preservation provision in the collective bargaining unit unenforceable, it simply found the work which was the subject of the grievance was not unit work.

### IV.

■ The final issue was the district court's order remanding the matter for rehearing before another arbitrator. Because we have reinstated the arbitrator's award in this case, we need not determine whether the trial court abused its discretion by not remanding the dispute to the same arbitrator. We note, however, that Minn.Stat. § 572.19, subd. 3 (1988), authorizes a district court to remand a grievance for rehearing before the same arbitrator who made the award where the court vacates an award on the ground the arbitrator exceeded his authority. Remanding grievances to the arbitrators who originally heard the dispute promotes the speedy resolution of disputes which the arbitration act seeks to encourage. *See e.g. Arrowhead Public Service Union v. City of Duluth,* 336 N.W.2d 68 (Minn.1983). Only where the award was procured by fraud or corruption or the arbitrator exhibited partiality toward one of the parties is rehearing by a different arbitrator required. Minn.Stat. § 572.19, subd. 1(1), (2) (1988). Here, the trial court made no finding that the arbitrator exhibited any bias or partiality, and it appears there was no need for a different arbitrator to be involved. In future cases we urge trial courts to make findings and give reasons for the appointment of a different arbitration on remand.

We reverse the judgment and reinstate the arbitrator's award.

SIMONETT, Justice (concurring in part, dissenting in part).

I agree with Parts II and IV of the court's opinion. I agree with the result reached in Part III but not with the reasoning. In my opinion, arbitrability is a nonissue.

The Federation consists of police officers employed at the airport who are classified as essential employees. Clerks and dispatchers in the communications center are in a separate bargaining unit. So are police supervisors. Over the years, police officers have performed intermittent dispatching work when a dispatcher would be temporarily unavailable. During the period from November 1984 to mid-May 1985, the employer greatly reduced the amount of substitute dispatching work that the police officers had been doing, apparently assigning it to others. The Federation grieved this work reassignment.

The key provision in the Federation's contract applicable to this grievance is Section 7.81:

> It is the intent of the EMPLOYER to provide employees in the bargaining unit the first opportunity for all law enforcement work normally performed by employees in the bargaining unit * * *.

The arbitrator had to decide, therefore, if the substitute dispatching work was "law enforcement work normally performed" by Federation police officers. After 5 days of testimony, the arbitrator made detailed findings, carefully set out his reasons, and denied the grievance. He expressly determined that the substitute dispatching work "is not law enforcement work normally performed by members of the unit within the meaning of Section 7.81 of the Agreement."

This should have ended the matter. This was the issue submitted by the parties for arbitration and the decision for which they had bargained. It was obviously within the

1. AFSCME Minnesota Councils submitted an amicus brief in which the same argument was raised.

arbitrator's authority to interpret Section 7.81 of the parties' collective bargaining agreement and to apply that section, as interpreted, to the facts of the case.

The case was unnecessarily complicated, however, when the Airports Commission also argued at the arbitration hearing that the matter "is simply not arbitrable." Apparently the Commission contended that the job classification of dispatcher had been placed in another bargaining unit and that police clerks and police supervisors, who were in different units, were being assigned substitute dispatching. These were facts, of course, for the arbitrator to consider in applying Section 7.81 of the Federation's contract, but these facts did not oust the arbitrator of jurisdiction to hear the Federation's grievance.

Nevertheless, in view of the arguments raised, the arbitrator, after finding that Section 7.81 did not entitle the police officers to dispatching work, went on to say as an alternative basis for his decision that "the issue is not arbitrable." [1] The arbitrator reasoned that the scheduling of employees in a unit to work "out of classification" in another unit for small, sporadic amounts of time was an exercise of the employer's inherent managerial rights. Seizing on this language, the Federation argues that the arbitrator ruled Section 7.81 unenforceable and, therefore, never decided the grievance on the merits.

The issue of whether or not the Airports Commission has an inherent managerial right not to assign police officers to substitute dispatching is not at issue here. This is grievance arbitration, not contract negotiation. The arbitrator is deciding what the language in an existing contract means, not what language should go into a contract which is in the process of being negotiat-

ed.[2] Here the parties had an agreement covering extra outside work, which provided that police officers would have first opportunity "for all law enforcement work normally performed by employees in the bargaining unit." Whatever the employer's inherent managerial rights might be, this is what the employer agreed to as its contractual obligation, and if this constituted yielding up some managerial perogatives, it made the contract clause no less arbitrable. If the arbitrator had decided that Section 7.81 gave Federation members preference for substitute dispatching work, the Airports Commission would have been liable for breach of its agreement. The arbitrator, however, ruled otherwise. This was the matter at issue and the arbitrator decided it.

In other words, even if the arbitrator's alternative reasoning was faulty, his decision applying Section 7.81 to the facts of the case was within his authority and must be sustained. Arbitrability is a jurisdictional concept. *See State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977). A grievance is arbitrable if the arbitrator has the power to decide the grievance. The arbitrator's power to decide is conferred by the contracting parties and is defined in the agreement to arbitrate. In this case, for example, the agreement provided "[t]he decision shall be based solely upon the arbitrator's interpretation of the meaning of application of the Agreement and the facts of the grievance presented."

Part of the confusion in this case apparently arises from the discussion of arbitrability in *Cloquet Education Ass'n v. Independent School Dist. No. 94*, 344 N.W.2d 416 (Minn.1984). There the union objected to the school district unilaterally assigning teachers to chaperone dances. The school

---

1. The arbitrator's decision states: "Since as a matter of contract interpretation the grievance must be denied, the other issues raised by the parties are technically moot and need not be addressed." The arbitrator further stated, however, that "in anticipation of the possibility of judicial review," he would also discuss the question of arbitrability raised by the employer.

2. Interestingly, as the arbitrator noted, the Federation collective bargaining agreement origi-

nally had a much broader job preference provision. At one time, the agreement provided that members of the Federation would have preference for "law enforcement work normally performed *by employer.*" (Emphasis added.) The current provision, limiting preference to "law enforcement work normally performed *by employees in the bargaining unit*" (emphasis added), was inserted by a previous arbitrator during interest arbitration.

district refused to arbitrate the teachers' grievance, claiming this assignment was an inherent managerial right. The contract, however, provided that out-of-class activities should be assigned in accordance with past practice. This court ordered grievance arbitration. But in so doing, the court said it first had to decide if out-of-class unilateral assignments were an inherent managerial right. (The court decided they were not.) *Id.* at 418. In other words, the court seemed to be saying that only if a matter is "bargainable," is it "grievable" and, therefore, "arbitrable." This is what the arbitrator in the instant case thought the court was saying. Bargainability, however, has nothing to do with arbitrability here, and, in my opinion, the language in *Cloquet* which gives that impression is misleading and leads to the kind of confusion we have in this case. *See id.* at 419 (Peterson, J., Simonett, J., and Kelley, J., concurring). There was no need in *Cloquet* to determine what was an inherent managerial right. The parties had an agreement on extra-duty assignments and construing that contractual obligation was a proper matter for arbitration.

What is "bargainable" is a matter for contract negotiations. Some managerial rights are prohibited by statute from being bargained away. *See, e.g.,* Minn.Stat. § 179A.07, subd. 1 (1988) (selection of supervisory employees). For other inherent managerial rights, an employer may (or may not) refuse to negotiate. *See* Minn. Stat. § 179A.07, subd. 1 (1988). But once a bargain is made, and even if the employer may have yielded on some inherent managerial right, disputes arising under the agreement are resolved by grievance arbitration, *i.e.,* the disputes are arbitrable to the extent the parties' arbitration clause so provides.

KEITH, Justice (concurring in part, dissenting in part).

I join in Justice Simonett's opinion concurring in part and dissenting in part.