## MENAHGA EDUCATION ASSOCIATION, Respondent,

v.

## MENAHGA INDEPENDENT SCHOOL DISTRICT NO. 821, Appellant.

### Nos. C4–96–2395, C6–96–2396 and C8–96–2397.

Court of Appeals of Minnesota.

Sept. 9, 1997.

Review Denied Nov. 18, 1997.

---

Harley M. Ogata, Minnesota Education Association, St. Paul, for Respondent.

Ralph T. Smith, Thomas T. Smith, Smith Law Firm P.A., Bemidji, for Appellant.

Considered and decided by AMUNDSON, P.J., and NORTON and PETERSON, JJ.

## OPINION

NORTON, Judge.

Appellant Independent School District No. 821 appeals the district court's: (1) confirmation of an arbitration decision; (2) finding that appellant committed an unfair labor practice; and (3) award of bad faith attorney fees. The district court abused its discretion by confirming the ambiguous arbitration award instead of resubmitting it to the arbitrator for clarification. We reverse and remand.

## FACTS

This case involves a grievance filed by respondent Menahga Education Association on behalf of its bargaining unit members who are employed as teachers by appellant Independent School District No. 821. The association is the teachers' exclusive representative. The original arbitrated dispute arose when the parties' 1993–95 master contract and its 1994–95 salary schedule expired. The master contract had a duration clause which provided that:

This Agreement shall remain in full force and effect for a period commencing on July 1, 1993, through June 30, 1995, and there-

after until modifications are made pursuant to the P.E.L.R.A. of 1971 as amended. Due to this clause, the parties continued to operate under the terms and conditions of the master contract in all matters except one, the salary schedule.

While the parties agree that the master contract is controlled by this duration clause, they do not agree that it applies to the 1994–95 salary schedule. The School District pointed to the following language in the master contract to support its contention that it could change the dollar amounts in the salary schedules:

The salary schedules are not to be construed as a part of a teacher's continuing contract and the school district reserves the right to withhold increment advancement, lane changes, or any other salary increase as the School District shall determine. The School District shall give written notice and the reason for such action.

Notably, the master contract specifically provides that the 1994–95 salary schedule is effective only for that particular school year.

Both parties and the arbitrator agree that the salary schedule is typical of school districts throughout the state and the nation. It is a grid with fifteen vertical columns (lanes) and seven horizontal rows (steps). Teachers' salaries increase by movement on the grid in two possible directions, downward or from left to right. For example, a teacher's salary increases by moving down one step upon the successful completion of an additional year of teaching. A teacher's salary can also increase by moving horizontally across the lanes upon the successful completion of advanced education credits and degrees. When the master contract and salary schedule expired in July 1995, the school district refused to increase teachers' salaries for an additional year of teaching by moving them down one step. Twenty-seven teachers' salaries were frozen at their 1994–95 levels. During the summer of 1995, the asso-

ciation filed a grievance and both parties agree that it was properly submitted to an arbitrator for resolution.

On April 12, 1996, Arbitrator Christine D. Ver Ploeg issued her award. In the award's discussion section there are three findings and an award paragraph. The first finding reads:

When the Parties' Contract expired, the rates of pay set forth in Article 6.2 expired as well. Thus, the dollar amounts set forth in [the 1994–95 salary schedule] expire and the District would technically be within its rights to replace them with different amounts. It has not exercised this right for the 1995–96 school year, but it would have the right to do so.

Based on the above finding, on April 22, 1996, the school board voted to create a new salary schedule. The new salary schedule added a 16th step, the practical effect of which was to move teachers an additional step while paying them the same salary. That is, if a teacher had been on step number one, lane one, that teacher's salary for 1994–95 would have been $22,000. After the school board's April 22 decision, the same teacher would move to step two, but would still be earning $22,000.

Sometime after the school board created the 16-step, 1995–96 salary schedule, the association asked the arbitrator to clarify her award. She refused for reasons not contained in the record.[1] Subsequently, on July 26, 1996, the association filed a summons and complaint in district court alleging that the school district's implementation of the 16-step schedule violated the Public Employment Labor Relations Act (PELRA). Only one week later, on July 31, 1996, the association moved the district court to modify or correct an award or, in the alternative, to confirm the arbitrator's April 12, 1996 award. On September 5, 1996, the district court found that the school district committed an

---

1. The school district asserted to the district court that the arbitrator refused to clarify because the award was clear. The association claimed that she refused to clarify her award because of a conflict between the statutes that allow an individual party unilaterally to go to the arbitrator for clarification and her code of conduct under the National Academy of Arbitrators, Rules of Professional Responsibility. Regardless of the arbitrator's reasons, under Minn.Stat. § 572.16 subd. 2 (1996), the district court is authorized to remand an arbitral award for clarification. *See also infra* note 3.

unfair labor practice by unilaterally implementing a new salary schedule. The court, in the same order and with the same memorandum, also confirmed the arbitration award. Lastly, on November 5, 1996, the court ordered appellant to pay costs and fees in the amount of $13,349.60.

## ISSUES

1. Did the district court abuse its discretion when it interpreted the arbitrator's award instead of resubmitting it to the arbitrator for clarification?

2. Did the school district commit an unfair labor practice?

3. Was the award of costs and fees appropriate?

## ANALYSIS

The primary intent of arbitration is to encourage voluntary resolution of disputes in a forum created and controlled by the parties in their written agreement and to discourage litigation. *Eric A. Carlstrom Constr. Co. v. Independent Sch. Dist. No. 77*, 256 N.W.2d 479, 483 (Minn.1977). In deciding the merits of a dispute, "an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact." *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn. 1977) (citations omitted). Courts may not reweigh the merits of the dispute. *Ramsey County v. American Fed'n of State, Co. & Mun. Employees, Council 91, Local 8*, 309 N.W.2d 785, 790 (Minn.1981) (citations omitted). Furthermore, "the scope of judicial review of an arbitration award is extremely narrow." *State Auditor v. Minnesota Ass'n of Prof'l Employees*, 504 N.W.2d 751, 755 (Minn.1993). Appellate courts review a district court's interpretation of an arbitration agreement de novo. *Michael–Curry Companies v. Knutson Shareholders*, 449 N.W.2d 139, 141 (Minn.1989).

### 1. Remand for Clarification

■ The district court is specifically permitted to remand an ambiguous award to the arbitrator for clarification under Minnesota's Uniform Arbitration Act. *See* Minn.Stat.

§ 572.16, subd. 2 (1996) ("If an application to the court is pending under section 572.18, 572.19, or 572.20, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in section 572.20 subdivision 1, or for the purpose of clarifying the award."); *Hilltop Constr. Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 240 (Minn. 1982). Where an arbitrator's award is ambiguous and does not definitively determine the parties' dispute, the correct action for the court is not to weigh the merits under the law but instead to resubmit the award to the arbitrator's bargained-for construction of the facts and decision under the contract. *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596–99, 80 S.Ct. 1358, 1360–62, 4 L.Ed.2d 1424 (1960); *see also International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 73–4, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967) (a vague court decree enforcing an abstract arbitration award is an invalid exercise of judicial authority); *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 10, 108 S.Ct. 364, 372 n. 10, 98 L.Ed.2d 286 (1987) (court must not judge merits where award is flawed but, where appropriate, should vacate and remand to arbitrator for further proceedings); *Hoit v. Berger–Crittenden Co.*, 81 Minn. 356, 358, 84 N.W. 48, 49 (1900) (when award is incomplete, uncertain, or does not resolve dispute between parties so to avoid future litigation, award is not enforceable). Finally, "[r]emanding grievances to the arbitrators who originally heard the dispute promotes the speedy resolution of disputes which the arbitration act seeks to encourage." *Metropolitan Airports Comm'n v. Metropolitan Airports Police Fed'n*, 443 N.W.2d 519, 525 (Minn.1989).

The central disagreement in this case lies in the parties' opposing interpretations of the award. The master contract provides that an arbitration decision regarding a grievance of a term or condition of employment, properly submitted to an arbitrator, shall be final

and binding on the parties.[2] The parties agree that the dispute was properly before the arbitrator. Thus, it was the parties' intent to be bound by the arbitrator's final award. However, the arbitrator's award supports opposing conclusions, making its confirmation and enforcement by the judiciary impossible. *Hoit*, 81 Minn. at 358, 84 N.W. at 49.[3]

The arbitrator's award consists of three specific findings and an award paragraph. The findings read:

1. When the Parties' Contract expired, the rates of pay set forth in Article 6.2 expired as well. Thus, the dollar amounts set forth in [the 1994–95 salary schedule] expire and the District would technically be within its rights to replace them with different amounts. It has not exercised this right for the 1995–96 school year, but it would have the right to do so.

2. The question of a teacher's placement on the salary grid is a different issue. Although Article 6.2 would permit the District to change the dollar amounts within that grid, Section 3—which unlike Article 6.2 is not by its terms "effective only for the 1994–95 school year"—does continue.

Section 3 clearly states that teachers can earn advancement on the schedule in two possible ways: (1) by the successful completion of an additional year of teaching, and (2) by the successful completion of recognized advanced education.

3. Although the District must grant step increases to eligible teachers, Article 6.2 grants it the right to withhold that step increase—as well as a lane change or any other salary increase—for just cause (e.g., for poor teaching or excessive absence) in the case of an individual teacher.

Both the language of Article 6.2, as well as the Parties' past practice, demonstrate that Section 2 does not give the District authority to withhold a step increase from an entire group of teachers. That section's reference to "a teacher's continuing contract" clearly refers to a tenured teacher in his or her individual capacity.

The arbitrator's award, which immediately follows the above findings, reads:

For the above reasons, this Grievance is hereby sustained. The District shall compensate eligible teachers per their placement on a salary schedule that reflects their earned one step increment, and shall reimburse those teachers for amounts improperly withheld.

An ambiguity exists between the intent of finding number one versus the intent of findings two and three and the award paragraph. It is unclear, especially in light of the school district's subsequent actions, what the following language from the first finding means: "[T]he dollar amounts set forth in [the 1994–95 salary schedule] expire and the District would technically be within its rights to replace them with different amounts. It has not exercised this right for the 1995–96 school year, but it would have the right to do so." Furthermore, the award is incomplete because at the time the arbitrator made her award, the school district had not yet implemented the new salary schedule; therefore,

2. The master contract states: "Decision by the arbitrator in cases properly before him shall be final and binding upon the parties, subject, however, to the limitation of arbitration decisions as provided by in the P.E.L.R.A. of 1971." The parties, the arbitrator, and the district court did not expressly address this clause. While it appears that all arbitral decisions must comply with the PELRA, this court will not presume that the arbitrator's lack of references to this provision means that she did not rely on it. *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361 (A court should not "assume that [the] arbitrator has * * * not stayed within the areas marked out for his consideration."); *see also Custom Farm Services, Inc. v. Collins*, 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976) (reviewing courts will not presume a lower court erred). Upon clarifi-

cation, the arbitrator can explain to what extent, if any, her award relied on this provision.

3. Because the April 22, 1996 award is indefinite, it is not final; therefore, the arbitrator will not be violating the doctrine of *functus officio* (once task finished, arbitrator is without power to re-examine decision) by clarifying an award that was never terminated. *See Industrial Mut. Ass'n Inc. v. Amalgamated Workers, Local Union No. 383*, 725 F.2d 406, 412 N.3 (6th Cir.1984). Furthermore, commentators suggest that where statutes like Minn.Stat. § 572.16 specifically give the district court power to remand for clarification, the common law doctrine of *functus officio* is modified. Frank Elkouri & Edna Asper Elkouri, *How Arbitration Works* 284 (4th ed.1985).

it is unknown whether finding number one of the arbitrator's award should be interpreted to condone the school district's new salary schedule or whether the second and third findings and the award paragraph should be read to prohibit the school district's new salary schedule.

The parties' opposing interpretations are both reasonably supportable. On one hand, the school district relied on the first finding when it replaced the dollar amounts in the 1994–95 salary schedule. Further, the school district claims to be in compliance with findings two and three because its new salary schedule allows the teachers to make step increases even though the step increases do not carry with them salary increases. It argues that finding number one does not require salary increases, only step increases. Finally, the school district claims to be in compliance with the award paragraph because it does not specifically reference the 1994–95 salary schedule, but rather says that "the District shall compensate eligible teachers per their placement on *a* salary schedule." (Emphasis added.)

On the other hand, the association claims that findings two and three and the award paragraph evince the arbitrator's intention to pay the teachers *additional salary* pursuant to the 1994–95 salary schedule. The association argues that the arbitrator's award paragraph clearly intends that the school district "reimburse those teachers for amounts improperly withheld" and that such a result is consistent with the specific language of findings two and three and the award paragraph.

*The district court, when faced with the choices of confirming, modifying, or correcting the findings and award, admitted it was* "not sure that [it] underst[oo]d what the arbitrator meant when she expressed the view that the District 'technically had the right to replace the dollar amounts in the 1994–95 salary schedule.'" However, *instead of remanding the award for clarification* under Minn.Stat. § 572.16, *the district court interpreted the award, disagreeing in places and adding statutory and legal bases to support its own reasoning.*

*If the arbitrator meant to suggest* that the School District had the unilateral right to take action of the type taken by the School Board on April 22, 1996, then *I disagree* with her pronouncement. * * * *I do not share the arbitrator's view* that the language [explicitly limiting the salary schedule to the 1994–95 school year] was the key to the case. * * * *[T]hat provision in the contract does not repeal [PELRA] nor change the language and plain meaning of the Duration Clause.* The 1994–1995 salary schedule was an essential part of the contract.* * *

The 1994–95 *salary schedule did not disappear from the planet* on June 30, 1995. It continued in full force and effect, along with the rest of the Master Contract. If the School District had any "right" to make changes in the 1994–95 salary schedule which, by contract and statute, continued to exist while negotiations for a new contract were continuing, that *right could not be exercised without compliance with the applicable provisions of Chapter 179A.* Any "right" which the School District might have had to make changes in the salary schedule could not be unilaterally exercised prior to the official declaration of an impasse in the District's ongoing contract negotiations with the Association.

(Emphasis added.) The district court filled in the gaps caused by the award's conflicting findings with its own legal analysis. This was improper because the collective bargaining agreement states that an arbitrator's decision regarding employment grievances, properly submitted to an arbitrator, is to be final and binding.

This case is similar to *several cases where* resubmission for clarification to the arbitrator was held to be the appropriate response to an ambiguous arbitration award. In *Enterprise Wheel,* the Supreme Court found that an arbitration award that failed to specify exact dollar amounts to be deducted from the award rendered the award unenforceable and *required resubmission to the arbitrator* for clarification. 363 U.S. at 598, 80 S.Ct. at 1362. The Court also specifically criticized what the district court did in the present case, that is, the approach of relying on substantive law to fill in gaps caused by the uncertainty of an arbitral award. *Id.* at 598–

99, 80 S.Ct. at 1361–62. Additionally, because federal labor decisions are instructive in interpreting Minnesota's labor cases, *International Bhd. of Teamsters v. City of Minneapolis,* 302 Minn. 410, 415, 225 N.W.2d 254, 257 (Minn.1975), the following federal decisions also support remanding an ambiguous arbitrator's award for clarification. *See, e.g., Domino Group, Inc. v. Charlie Parker Memorial Foundation,* 985 F.2d 417, 420 (8th Cir.1993) (proper for district court to remand ambiguous award to the arbitrators for clarification so that the court will know exactly what it is being asked to enforce); *Americas Ins. Co. v. Seagull Compania Naviera,* 774 F.2d 64, 67 (2d cir.1985) ("[A] court should not attempt to enforce an award that is ambiguous or indefinite.").

Also, it is important to point out that just as a reviewing court is prohibited from weighing the merits of an ambiguous award, it is similarly prohibited from ignoring the ambiguity and summarily affirming the award. *See Longshoremen's,* 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (district court's summary order confirming arbitrator's ambiguous award was improper because it did not "state in 'specific * * * terms' the acts that it required or prohibited. * * * The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension.").

This court is also mindful of United States and Minnesota Supreme Court decisions that underscore the importance of differentiating between minor and fundamental ambiguities in awards.

> A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator

has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration.

*Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361; *see also Hilltop Const.,* 324 N.W.2d at 239–40 (stating that arbitrators need not give reasons for decision).

The ambiguity in the present case is distinguishable from the type discussed in *Enterprise Wheel.* In award clarification cases, there exist at least two types of ambiguous arbitral awards. One type occurs when the award exceeds the arbitrator's powers, requiring the reviewing court to vacate the award. *See Metropolitan Waste Control Comm'n v. City of Minnetonka,* 308 Minn. 385, 389, 242 N.W.2d 830, 832 (1976). Another type exists when the language or structure of the award is confusing and does not resolve the dispute. *Enterprise Wheel* instructs courts facing either type of ambiguous award that it is improper to assume that the arbitrator acted outside his authority. *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361. *Enterprise Wheel,* in fact, refused to infer that the arbitrator's ambiguous award was due to the arbitrator's extra-agreement considerations. *Id.* Instead, the Court affirmed the merits of the award but remanded it to the arbitrator with special instructions to clarify specific dollar amount in the award. *Id.* at 599, 80 S.Ct. at 1362. Obviously the Court did not believe a remand simply to clarify unclear language would "lead arbitrators to play it safe by writing no supporting opinions." *Id.* at 598, 80 S.Ct. at 1361. Neither of the parties in this case argues that the ambiguity in question flows from the arbitrator's extraagreement considerations. The ambiguity plainly exists because of uncertain language in the award. Therefore, as in *Enterprise Wheel,* a remand for clarification in this case will not inhibit arbitrators from rendering opinions with their awards for fear of judicial criticism.

The district court's interference with the arbitrator's decision is also inconsistent with the strong judicial policy of non-intervention with arbitral proceedings. *See Misco,* 484 U.S. at 37, 108 S.Ct. at 370 (The "statutes regulating labor-management relations * * * reflect a decided preference for private set-

tlement of labor disputes without the intervention of the government."); *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362 ("It is the arbitrator's construction which was bargained for; * * * the courts have no business overruling him because their interpretation of the contract is different from his."); *Ramsey County*, 309 N.W.2d at 790 ("[I]t is well settled under Minnesota law that once arbitrability is established, the role of the judiciary does not encompass a re-examination of the merits of the case.").

This court also recognizes that the district court was in a difficult position. First, on July 24, 1996, the association filed suit seeking a declaration that the school district committed several unfair labor practices under PELRA. Second, only one week later, the association made a vague motion to the court requesting that the arbitration award be modified, corrected, or confirmed. Third, the district court was told by the parties that the arbitrator had refused the association's request to clarify the award, in effect leaving the court to interpret its intent. Fourth, neither of the parties argued to the district court that it should order the arbitrator to clarify her award. Finally, even if the district court, in considering its options, had looked to Minn.Stat. § 572.16, it would have found only a few cases that discuss section 572.16 and none using it to remand an ambiguous award to the arbitrator. *See Hilltop Const.*, 324 N.W.2d at 240 ("the trial court does have the authority to compel arbitrators to clarify their awards;" however, in this case it was not an abuse of discretion to not remand for clarification); *Crosby–Ironton Fed'n of Teachers, Local 1325 v. Independent Sch. Dist. No. 182*, 285 N.W.2d 667, 669 (Minn.1979) (resubmission to the arbitrator for clarification is a valid option; however, not in this case); *Adler v. Safeco Ins. Co.*, 413 N.W.2d 566, 568 (Minn.App.1987) (clarification of award possible; however, clarifying cannot mean an arbitrator can "correct its own substantive errors").

Nonetheless, after reviewing binding and persuasive case law in this area, and also because of the long-standing policy of the judicial non-interference in arbitral decisions, this court is persuaded that resubmission to the arbitrator, as set forth under Minn.Stat. § 572.16, was the proper remedy to apply to an uncertain and ambiguous arbitration award. The case is remanded to the district court with instructions to resubmit it for clarification to Arbitrator Ver Ploeg. Resubmission to the arbitrator who initially heard the dispute is preferred because it "promotes the speedy resolution of disputes which the arbitration act seeks to encourage." *See Metropolitan Airports Comm'n*, 443 N.W.2d at 525. The district court should order the arbitrator to clarify the intent of her first finding in relation to findings two and three and the award paragraph, especially in light of the school district's April 22, 1996 adoption of a new salary schedule.

## 2. Unfair Labor Practice

■ Because of this court's decision to remand for clarification, we must also reverse the district court's findings that the school district committed an unfair labor practice. The district court found that the school district's March 22, 1996 decision to add a 16th step to the salary schedule constituted an unfair labor practice because it failed to negotiate with the association before altering a term or condition of employment and thereby violated Minn.Stat. § 179A. However, the district court once again relied on its interpretation of the arbitrator's award, not the arbitrator's. Under the district court's decision, the only way that the school district could have committed an unfair labor practice by changing the salary schedule would be if the ambiguity in the arbitrator's first finding were ignored. That is, the first finding states that the school district "would technically be within its rights to replace [the dollar amounts in the 1994–95 salary schedule] with different amounts." This statement suggests that the arbitrator may believe that the parties negotiated their agreement to give the school district authority to change the dollar amounts in the salary schedule at the end of the 1994–95 school year. As already pointed out, the district court explicitly disagreed with this possible interpretation and the unfair labor practice finding flows from the district court's view of the contract, not the arbitrator's. Thus, the

unfair labor practice finding must also be reversed.

### 3. Costs and Fees

 Lastly, the district court's award of costs and fees is reversed. The district court's order does not state any legal basis for the award of costs and fees. The district court does not detail whether the award is for the unfair labor practice claim or the motion to confirm, modify, or correct the arbitral award, or both. If the district court awarded any costs and fees for expenses incurred during the arbitration proceeding, this was clearly error. The master contract states: "Each party shall bear its own expenses." Finally, if as the parties argue on appeal, costs and fees were awarded under Minn.Stat. § 549.21, subd. 2 (1996), it cannot be said that the school district's actions were frivolous or in bad faith when they were based on ambiguous language that arguably commissioned its conduct.

### DECISION

We reverse and remand with instructions to resubmit the arbitration award to the arbitrator for clarification pursuant to this decision.

**Reversed and remanded.**