283 N.W.2d 524 (1979)
GENERAL DRIVERS UNION LOCAL 346, for Itself and on Behalf of Its Members, Employees of Independent School District No. 704, Respondents,
v.
INDEPENDENT SCHOOL DISTRICT NO. 704, PROCTOR SCHOOL BOARD et al., Appellants.
No. 49608.
Supreme Court of Minnesota.
August 24, 1979.
*525 Edgerton, Theobald & Abelsen and James N. Abelsen, Duluth, for appellants.
Halverson, Watters, Bye & Downs, Don L. Bye, and Jeanne M. Forneris, Duluth, for respondents.
Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Patricia A. Maloney, St. Paul, Thomas Cline, Aitkin, for Minnesota School Boards Assn., amicus curiae.
Heard before SHERAN, C. J., and OTIS and SCOTT, JJ., and considered and decided by the court en banc.
OTIS, Justice.
Independent School District No. 704 appeals from an order of the St. Louis County District Court, which permanently enjoined it from contracting out its school bus services without first complying with the collective bargaining agreement between it and the bus drivers' union and complying with the provisions of the Minnesota Public Employees Labor Relations Act (PELRA); required that the unit bus drivers remain employed by defendant school district and be reinstated to their former bargaining unit positions, awarded damages to the bus drivers in the form of base pay subject to mitigation, and ordered defendant to bargain in good faith with the exclusive union representative. The issues on appeal are (1) *526 whether the collective bargaining agreement gave defendant the right to contract out busing services and to terminate the unit positions without submitting the question to negotiation and; (2) if contracting out is a mandatory subject of negotiation, whether plaintiff waived its claim of an unfair labor practice by not demanding negotiation after receiving certain information of defendant's activities pertaining to contracting out bus services. We affirm.
On February 13, 1978, plaintiff union, (representing the bus drivers employed by Independent School District No. 704) and defendant school board entered into a collective bargaining agreement, effective through June 30, 1978, and thereafter until modified in compliance with PELRA. Negotiation sessions on a new contract were commenced on May 12, 1978, and continued through July of 1978, during which time the assistance of a state mediator was employed. Although negotiations were not terminated after the July session, no further sessions were held.
Independent of the negotiation sessions, in April of 1978, the school superintendent and school transportation supervisor called together the bus drivers, who had been laid-off at the end of the academic year, to inform them that, due to financial problems, summer jobs would not be available. The union representative was not included in the meeting. At the meeting the superintendent explained that a cost analysis of the current transportation operation would be conducted. According to the testimony of some unit drivers, the superintendent also assured the drivers that bus services would not be contracted out to an independent contractor. The superintendent did not recall making such a statement.
During May and June, defendant solicited bids for contracting bus services with a third party. The subject of contract busing was discussed at three school board meetings: once preliminary to bid solicitation, once for approval of the advertisement, and once for bid evaluation. Although several board members were opposed to contract busing generally, they acquiesced in the decision on the basis of economic necessity. Whether or not such economic necessity existed was disputed at trial.
While the bid process proceeded, the bus drivers, though aware of rumors that services would be contracted out, were informed by defendant by letter that their insurance coverage would continue through the "summer lay-off." On the basis that the unemployed status was thus temporary, the drivers were denied unemployment compensation.
On July 8, 1978, the union representative was told by the state mediator that defendant was considering contract busing. On July 12 the school superintendent showed the bid from Voyageur Bus Company to the union representative. The representative also saw the appraisals of the school district bus fleet later that month. On July 25, the union received a copy of the Notice for Bids. Then, on August 3, the drivers were informed by letter that a contract had been awarded to Voyageur Bus Company and that they would not be recalled to work.
One unit driver investigated employment opportunities with Voyageur Bus Company. She discovered that Voyageur intended to pay its drivers $4.00-$4.25 per hour for a 20-hour week. Unit drivers were paid $5.83 per hour for a 40-hour week under the collective bargaining agreement.
Suit against defendant for damages and injunctive relief was commenced on August 14. On August 24, the union moved the district court for an order permanently restraining defendant from contracting out school bus services or from selling or disposing of the school bus fleet. Because the buses had already been sold, the court denied that part of the relief sought but ordered defendant to refrain from contracting out the services and to preserve the status quo position of the unit drivers. The case was tried on the merits on September 19, 1978, after which the court issued its order from which appeal is taken.
The first issue raised by defendant is whether the union bargained away its statutory right to negotiate contracting out by *527 agreeing to certain language in the collective bargaining agreement between the parties. While defendant agrees that contracting out is a term and condition of employment, which is subject to the statutory obligation to negotiate,[1] it claims that the following language of the collective bargaining agreement between the union and the school district permits it to contract out bus services without submitting the issue to negotiation:
* * * * * *
"ARTICLE V
"SCHOOL BOARD FUNCTIONS

"The School Board possesses the sole right to operate the school system and all management rights repose in it, except as expressly modified by this Contract and applicable laws. These rights include, but are not limited to, the following:
"1. To direct all operations of the school system.
* * * * * *
"4. To suspend, discharge and take other disciplinary action against employees for cause.
"5. To create revise or eliminate positions depending on the needs of the School District or any other legitimate reason.
"6. To maintain efficiency of school system operations and to operate the schools in a manner most economical to the taxpayers of the School District.
"7. To introduce new or improved methods or facilities or to change existing methods or facilities. * * *"
In International Bro. of Teamsters v. City of Minneapolis, 302 Minn. 410, 415, 225 N.W.2d 254, 257 (1975) we said the legislature intended that the scope of mandatory bargaining area be construed broadly so that the purpose of resolving labor disputes through negotiation could best be served. Thus, we agree with the Federal court that any waiver of the statutory right to bargain over a mandatory subject of bargaining must be in clear and unmistakeable language. See, N L Industries, Inc. v. N.L.R.B., 536 F.2d 786, 788-89 (8 Cir. 1976). The contract language relied upon by defendant does not meet this standard. The subject of contracting out is neither expressly nor clearly implied in the language of the contract. Defendant emphasizes the contract language that empowers it to eliminate positions. The action taken to contract out bus services, however, was substitution of non-unit drivers for unit drivers to perform essentially the same services. To find that the negotiating parties contemplated that contracting out was included in the clause concerning elimination of positions would be to strain the plain meaning and the practical effect of that contract language.
None of the other provisions relied upon by defendant reasonably supports the conclusion that plaintiff relinquished its right to negotiate the subject of contracting out.
Defendant further contends that, even if contracting out were a mandatory subject for negotiation, the union's failure to demand negotiation, after certain information regarding defendant's activities came to its attention, constituted waiver of any unfair labor practice.
The obligation imposed on the public employer by Minn.St. 179.66, subd. 2, "to meet and negotiate in good faith * * * regarding * * * the terms and conditions of employment" implicitly contains the requirement that sufficient notice of *528 decisions pertaining to the terms and conditions be given by the employer to the employee.
The notice given in the instant case was not sufficient under the circumstances. In earlier years false rumors that bus services would be contracted out had circulated in the community. While contracting out was again a topic of discussion in 1978, the imminency of such a change was denied by the superintendent, who assured the drivers that contracting out was not a current possibility. By also announcing the commencement of a cost analysis of the transportation system, the subsequent bid solicitation by the school board may well have been viewed as part of the analysis, but not as a clear indication that the drivers would lose their jobs within a month.
Notice to the employee, where the decision is so fundamental to his welfare as is the very existence of his job, must be more than implication or rumor. It is incumbent on the employer to give notice that a decision has been made, or that one is imminent, before that decision is implemented.
Defendant argues that notice of its decision might have constituted coercive behavior, citing as authority N.L.R.B. v. Adams Dairy, Inc., 350 F.2d 108 (8 Cir. 1965), where the court speculated that coercion might have existed had Adams Dairy ever stated to the union during negotiations that unless the company reduced the union wages it would eliminate the positions of the union drivers. In that case the issue of closing down had been raised and discussed prior to the execution of the governing contract. Thus, unlike the instant case, the question of sub-contracting had been negotiated and nothing further could have been gained from renegotiation short of possible coercion. The case before us is wholly distinguishable.
We are mindful of the economic burden imposed upon defendant as a result of implementing the decision to contract out without first providing an opportunity for negotiation to plaintiff. Although regrettable, the plight defendant has brought upon itself is no defense to circumventing the protections granted the employee under PELRA.
Moreover, we reject the claim that once a decision to contract out is made any negotiation is futile. We agree with the observation of the Michigan court, in a similar case, Van Buren Pub. Sch. Dist. v. Wayne Cty. Cir. J., 61 Mich.App. 6, 26, 232 N.W.2d 278, 288 (1975), where the decision to contract out busing was held a mandatory subject of bargaining:
"We are not convinced that bargaining would have served no purpose. The merits of Van Buren's decision to subcontract are not so clear as to eliminate the need for discussion. Union input might reveal aspects of the problem previously ignored or inadequately studied by Van Buren. The union may well be able to offer an alternative to the one chosen by Van Buren which would fairly protect the interests and meet the objectives of both. Surely discussion of the subject would have done much to `promote industrial peace' and may even have prevented the present lawsuits. Negotiation, even if ultimately unsuccessful, does much to appease; explanation at the bargaining table will sooner quell anger than receipt of a tersely worded termination slip." Accord, N.L.R.B. v. Townhouse T. V. & Appliances, Inc., 531 F.2d 826 (7 Cir. 1976).
Even if the school board decides to abide by its decision to contract out, the effects of that decision, including such topics as severance pay and pension, may well be proper subjects for negotiation.
We conclude, as did the trial court, that plaintiff did not waive its right to negotiate the subject of contracting out the bus services.
Affirmed.
TODD, J., took no part in the consideration or decision of this case.
NOTES
[1] Minn.St. 179.66, subd. 2, provides: "A public employer has an obligation to meet and negotiate in good faith with the exclusive representative of the public employees in an appropriate unit regarding grievance procedures and the terms and conditions of employment, but such obligation does not compel the public employer or its representative to agree to a proposal or require the making of a concession." (Italics supplied.)

The Minnesota School Board Association, amicus curiae, contends that contracting out is an inherent managerial decision, not subject to mandatory negotiation under PELRA. We are persuaded, however, that whether or not an employee's job will be terminated so that the same function can be performed by a non-unit employee is a subject contemplated for negotiation as a term and condition of employment.