**SCHOOL SERVICE EMPLOYEES UNION LOCAL # 284, et al., Petitioners, Appellants,**

v.

**INDEPENDENT SCHOOL DISTRICT # 88, Respondent.**

No. C9–90–533.

Court of Appeals of Minnesota.

Aug. 21, 1990.

Review Denied Oct. 25, 1990.

Bruce P. Grostephan, Peterson, Engberg & Peterson, Minneapolis, for appellants.

Paul Hetland, John O'Donnell, Knutson, Flynn, Hetland & Deans, St. Paul, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

School Service Employees Union Local # 284 (union) appeals denial of a motion to compel Independent School District # 88 (school district) to submit to binding arbitration the issue of subcontracting out of its food service operations. We reverse.

## FACTS

The union is the collective bargaining agent for five persons formerly employed as cooks for the school district. The collective bargaining agreement, which ran from July 1, 1987, through June 30, 1988, contained a duration clause which noted that the agreement remained in effect after June 30, 1988, "until modifications are made pursuant to the P.E.L.R.A." (Public Employment Labor Relations Act). The clause also provided that "[i]f either party desires to modify * * * this agreement commencing at its expiration, it shall give written notice of such intent no later than 90 days prior to said expiration."

The union gave notice of an intention to modify on February 18, 1988. Negotiation and mediation sessions were held in 1988 and 1989. The business manager of the school district testified that he told the cooks in May 1988 that the school district was considering subcontracting out the food service operation; this was admitted by the union.

In a proposal dated April 27, 1989, the school district noted it was unwilling to subsidize the food service operation and that it would be unable to avoid such subsidies if forced to comply with the state's comparable-worth statute, Minn.Stat. §§ 471.99–.999 (1988). In that same document the school district proposed a waiver of the comparable-worth requirements as well as an overall three-year wage freeze and deletion of holiday and vacation benefits. The union proposed interest arbitration pursuant to Minn.Stat. § 179A.16 (1988), which was rejected by the school district.

The union then sued the district, alleging a violation of the comparable-worth statute, a violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1(2)(c) (1988), and a refusal to negotiate in violation of Minn.Stat. § 179A.13 (1988). This suit is currently pending. On July 13, 1989, the school district entered into a contract with Taher, Inc., to provide food services. Later that month the school district sent letters to the five union employees notifying them that they were no longer employees but that Taher had agreed to employ them. On August 4, 1989, the union filed a grievance asserting that the employees had been terminated without just cause in violation of the collective bargaining agreement. The union requested reinstatement and back pay. The school district rejected arbitration, asserting that the issue of subcontracting was not grievable.

The union responded by moving the trial court to compel arbitration. The trial court denied the motion, ruling that while an arbitrator had authority to interpret and apply the duration clause of the contract (deemed a condition or term of employ-

ment), the decision to subcontract was an "inherent managerial right" and, as such, exempt from arbitration. The union appeals denial of its motion to compel arbitration.

## ISSUE

Is it reasonably debatable whether the issue of subcontracting out of the food service operation was within the scope of the arbitration clause in the collective bargaining agreement?

## DISCUSSION

As the issue on appeal presents a purely legal question, this court is not bound by the decision of the lower court. *First Trust Co., Inc. v. Leibman*, 445 N.W.2d 547, 549 (Minn.1989).

The union brought its motion to compel arbitration under Minn.Stat. § 572.09 (1988), which directs a trial court to compel arbitration if the parties have previously entered into an arbitration agreement which governs the controversy. *Id.* The supreme court has set forth the following guidelines to determine whether arbitration is to be compelled:

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court.

(2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5).

(3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b]).

*Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972). Determination of whether it is reasonably debatable that the parties intended to arbitrate an issue is drawn from the language of the arbitration agreement itself. *Minnesota Federation of Teachers, Local # 331 v. Independent School District # 361*, 310 N.W.2d 482, 484 (Minn. 1981).

We begin our analysis with the proposition that arbitration to resolve disputes over terms and conditions of employment is favored in Minnesota, *see* Minn.Stat. § 179A.01 (1988), and that arbitrability of an issue is determined in the first instance by an arbitrator if it is "reasonably debatable" that the issue is covered under the arbitration clause in question. *Atcas*, 292 Minn. at 341, 197 N.W.2d at 452.

The contract defines an arbitrable grievance as an employee allegation, disputed by the employer, relating to "the interpretation or application of terms and conditions of employment insofar as such matters are contained in this Agreement." [1]

The union asserts that even though subcontracting is not expressly mentioned in the agreement as a term and condition, the decision to subcontract caused several provisions of the agreement to be violated; the termination clause (discharge for cause only, excluding all other reasons including subcontracting), the recognition clause, rates of pay clause, hours and type of service, and seniority rights provisions were all implicated.

The issue of subcontracting was addressed by the supreme court in *General Drivers Union Local 346 v. Independent School District No. 704, Proctor School Board*, 283 N.W.2d 524 (Minn.1979). The court held that the issue of subcontracting is a mandatory subject of negotiation as a term and condition of employment under the PELRA. *Id.* at 527–28. The supreme court made this ruling even in the light of

---

1. We note as persuasive, though not determinative, that a similarly worded arbitration clause in *Local 1912 International Association of Machinists v. United Steel Potash Co.*, 270 F.2d 496 (10th Cir.1959), was held to cover the issue of subcontracting based on an implied covenant of "good faith and fair dealings" implying that "neither party shall do anything which will have the effect of destroying * * * the right * * * to receive the fruits of the contract." *Id.* at 498.

contract language specifically empowering the employer to eliminate job positions. *Id.*

The school district argues that it did not terminate the employees, but terminated the jobs. It asserts, therefore, that the termination clause of the collective bargaining agreement cannot be invoked and that arbitrability of the issue is not reasonably debatable.

The record discloses that the school district stated in its argument to the trial court that, while the contract still exists, "there are no employees now \* \* \*." It also discloses that the termination letters sent to the union employees, a copy of which was before the trial court, informed each employee that he or she "would no longer be an employee of the New Ulm Public Schools."

In *General Drivers* the supreme court noted that "[t]he action taken to subcontract out \* \* \* services \* \* \* was substitution of non-unit [non-union] drivers for unit [union] drivers." *Id.* at 527. The court thus held that subcontracting could not be covered by the contract clause relating to the elimination of job positions. *Id.* Here also, the action taken by the school district was unequivocally a termination of the employees and not of the jobs, presently being filled by employees of the subcontractor, Taher, Inc.

The trial court erred by basing its decision to deny the motion to compel arbitration on the lack of a specific provision in the collective bargaining agreement on subcontracting. The trial court also failed to address the language on subcontracting in *General Drivers*. It was error for the trial court to conclude that the issue of subcontracting was a matter of inherent managerial policy, not, as is held in *General Drivers*, a term or condition subject to mandatory negotiation. *Id.* at 527–28. If "contracting out" must be negotiated, it cannot be an inherent managerial prerogative, and thus it must at least be reasonably debatable that it is subject to arbitration. The question of arbitrability is for the arbitrators to decide.

## DECISION

We reverse the trial court's denial of the union's motion to compel arbitration and order the parties to submit the issue of the arbitrability of "subcontracting out" the school district's food service operation to the arbitrators, using the mechanism of the parties' collective bargaining agreement.

Reversed.