**In the Matter of Arbitration Between INDEPENDENT SCHOOL DISTRICT NO. 88, NEW ULM, MINNESOTA, Petitioner, Appellant,**

v.

**SCHOOL SERVICE EMPLOYEES UNION LOCAL 284, et al., Respondents.**

**No. C8–92–589.**

Court of Appeals of Minnesota.

Sept. 1, 1992.

Review Granted Oct. 28, 1992.

Paul W. Hetland, John J. O'Donnell, Knutson, Flynn, Hetland Deans & Olsen, St. Paul, for appellant.

Bruce P. Grostephan, Peterson, Engberg & Peterson, Minneapolis, for respondents.

Considered and decided by HARTEN, P.J., and KLAPHAKE and FOLEY*, JJ.

## OPINION

KLAPHAKE, Judge.

Independent School District No. 88 appeals from an order denying its motion to vacate an arbitration award where the school district's act of subcontracting its food service operation resulted in termination of five former food service employees. We affirm.

## FACTS

Respondent School Service Employees Union Local # 284 (the union) represents five people formerly employed as cooks in the food service operation of appellant Independent School District # 88 (the school district). The parties' employment relationship is governed by a collective bargaining agreement (the agreement) effective from July 1, 1987 through June 30, 1988. The agreement also contains a duration clause that extends its effectiveness after June 30, 1988 "until modifications are made pursuant to the P.E.L.R.A. [Public Employment Labor Relations Act]." The agreement requires written notice of a party's intent to modify or amend the agreement at least 90 days before it expires.

On February 18, 1988, the union notified the school district of its intent to modify the agreement. The parties attempted to negotiate a new contract throughout 1988 and 1989. The school district's proposed contract modification required the union to waive its rights under the comparable-worth statute, Minn.Stat. §§ 471.991–.999 (1988), and proposed a three-year wage freeze and the deletion of holiday and vacation benefits. The school district stated that the union must accept this proposed modification or the school district would subcontract the entire food service operation to prevent its continuing subsidization. The union rejected the proposed modification and instead proposed interest arbitration, which the school district rejected. The union then sued the school district, alleging violations of the comparable-worth statute, the Minnesota Human Rights Act, and PELRA. This suit is currently pending in district court.

After the union refused the contract modification proposal, the school district contracted with a private company, Taher, Inc., for complete food service. By letter, the school district terminated the five union employees, but notified them that Taher had agreed to employ them. As a result of the school district's actions, the employees, ranging in age from 45 to 64 years, each lost health insurance coverage. Two were forced to obtain other insurance at substantially higher costs, while the remaining three employees have no health insurance. These five employees, who had worked for the school district between 14 and 28 years, lost accumulated sick leave of up to 145 days. In addition, all of the employees prematurely withdrew PERA funds.

On August 4, 1989, the union filed a grievance, alleging the school district terminated the five employees without just cause and denied them wages and benefits in violation of the agreement. The union requested their reinstatement with back pay. The school district refused to arbitrate the grievance, contending its decision to subcontract was a nonarbitrable inher-

---

* Retired judge of the Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

ent managerial decision reserved to it under the agreement. The school district also contended the subcontract did not violate the agreement because the agreement had ceased to be effective.

Following the union's motion to compel arbitration, the district court determined the agreement's duration clause was a term and condition of employment subject to an arbitrator's interpretation. However, the district court refused to compel arbitration because the decision to subcontract was an inherent management decision reserved to the school district. This court reversed and remanded, holding the arbitrability of the subcontracting issue was reasonably debatable and should first be decided by an arbitrator. *See School Serv. Employees Union Local # 284 v. Independent Sch. Dist. # 88*, 459 N.W.2d 336 (Minn.App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990). This court also rejected the school district's contention that it terminated the jobs rather than the employees, stating "the action taken by the school district was unequivocally a termination of the employees and not of the jobs." *Id.* at 339.

■ The matter proceeded to arbitration. The arbitrator determined the school district's right to subcontract the food service operation was a proper subject for grievance under the agreement because the decision to subcontract effectively terminated the union employees, denied them benefits under the agreement, and removed the union as their sole representative. The arbitrator also found that the food service program had decreased its cumulative deficit substantially and, in fact, had made a profit during the 1988–89 school year. In addition, the arbitrator noted that the agreement did not expressly reserve the right to subcontract to the school district or deny the union the right to grieve this issue. The arbitrator concluded the school district's right to subcontract was arbitrable, found the school district had terminated the union employees without just cause,

and had denied them benefits in violation of the agreement. The arbitrator awarded the five employees reinstatement with back pay. The district court refused to vacate the arbitrator's decision and award, and the school district appeals.[1]

## ISSUE

Are the effects of the decision to subcontract subject to arbitration?

## ANALYSIS

Judicial interference with the arbitration process under a public sector agreement is governed by the Uniform Arbitration Act, Minn.Stat. ch. 572 (1990). *Arrowhead Pub. Serv. Union v. City of Duluth*, 336 N.W.2d 68, 70 (Minn.1983); *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). In reviewing a determination of arbitrability, we proceed de novo. *Berthiaume*, 259 N.W.2d at 909.

*Contract Expiration*

■ In contending that its decision to subcontract is not arbitrable, the school district argues that the agreement was no longer effective when it subcontracted the food service operation. For several reasons, we disagree.

The agreement states that it remains in effect "until modifications are made pursuant to the PELRA." No such modifications were made. The agreement contains no expiration clause or any other termination terms. Nor does the agreement expire by force of law. *See* Minn.Stat. § 179A.20, subd. 3 (1990) (under PELRA, duration of collective bargaining agreement may not exceed three years). Moreover, the mediator did not declare an impasse. The agreement, therefore, continued to govern the parties' relationship at the time the school district terminated the employees.

In addition, the school district superintendent admitted to the agreement's continuing effectiveness during prior proceedings. In the order refusing to compel arbi-

---

1. Usually, an order refusing to vacate the arbitration award is not appealable. However, we construe this order to be the functional equivalent of an order confirming the arbitration award, which is appealable under Minn.Stat. § 572.26, subd. 1(3) (1990).

tration, the district court determined the arbitrator had authority to decide whether the agreement was effective. This court did not review that portion of the decision, and the arbitrator found the agreement was effective. Moreover, at oral argument, counsel for the school district conceded the agreement had not expired. We conclude the agreement governed the parties' relationship at the time of subcontracting and termination.

*Arbitrability*

Having resolved this preliminary matter, we turn to the question of subcontracting itself. The school district contends that we must determine whether a public employer which is a party to a union contract may ever subcontract. We disagree. The issue before us is whether the termination of the employees and other effects of subcontracting are subject to arbitration.

■ The arbitrator's authority is determined by the parties' intent as expressed in the governing contract. *Arrowhead*, 336 N.W.2d at 70. In some cases, where arbitrability is "inextricably intertwined" with the merits of the dispute, the arbitrator's decision on arbitrability is a decision on the merits and must be confirmed so long as it draws its essence from the agreement. *Metropolitan Airports Comm'n v. Metropolitan Airports Police Fed'n*, 443 N.W.2d 519, 524 (Minn.1989). An arbitrability issue is "inextricably intertwined" if the arbitrability decision cannot be made without first determining the merits of the dispute. *Id.* (arbitrator necessarily decided merits of police dispatcher dispute in determining whether grievance over work assignment was arbitrable).

■ The agreement here defines a grievance as a dispute or disagreement as to the application or interpretation of terms and conditions of employment "insofar as such matters are contained in this Agreement." The agreement further states "[t]he arbitrator shall have jurisdiction over disputes or disagreements as provided in the P.E.L.R.A." PELRA provides that grievance arbitration is subject to the jurisdictional limits governing interest arbitration. Minn.Stat. § 179A.21, subd. 3 (1990). Un-

der PELRA, the arbitrator's jurisdiction includes only

> items of dispute certified to and submitted by the board. However, [the arbitrator] has no jurisdiction or authority to entertain any matter or issue that is not a term and condition of employment, [unless the employer agrees].

Minn.Stat. § 179A.16, subd. 5 (1990).

Both the agreement and PELRA define "terms and conditions of employment" as the hours of employment, compensation and fringe benefits, and the employer's personnel policies affecting the working conditions of the employees. *See* Minn. Stat. § 179A.03, subd. 19 (1990). The agreement also provides for the school district's inherent managerial rights to determine its budget, use technology, organize its structure and choose personnel. Thus, if subcontracting involves a term and condition of employment, the dispute is arbitrable. As this determination necessarily requires resolution of the merits of the dispute, we consider the issue of arbitrability to be inextricably intertwined with the merits and we must confirm the arbitrator's decision if it "draws its essence" from the agreement. *See Metropolitan Airports*, 443 N.W.2d at 524.

Here, the arbitrator found the decision to subcontract implicates the agreement's terms and conditions of employment. The school district terminated five employees with whom it had a contractual relationship. The school district did not eliminate positions or work, it merely substituted others to do the same work. This decision violated the contract provision requiring just cause for termination and denied the employee's rights to wages and benefits. Further, the arbitrator rejected the claim that the existing food service program operated at a deficit and found the program had made a profit during the 1988–89 school year. The arbitrator's conclusion that the school district's action destroyed the employees' right to receive the benefits of the agreement draws its essence from the agreement.

Moreover, we believe the arbitrator's decision finds support in Minnesota case law and decisions from other jurisdictions. *See International Bhd. of Teamsters v. City of Minneapolis*, 302 Minn. 410, 225 N.W.2d 254 (Minn.1975) (federal NLRA cases are instructive in construing PELRA cases). In rejecting the contention that subcontracting is an inherent managerial decision, the Minnesota Supreme Court stated that

> whether or not an employee's job will be terminated so that the same function can be performed by a non-unit employee is a subject contemplated for negotiation as a term and condition of employment.

*See General Drivers Union Local 346 v. Independent Sch. Dist. No. 704*, 283 N.W.2d 524, 527 n. 1 (Minn.1979). In addition, the effects of the decision to subcontract are negotiable as terms and conditions of employment. *Id.* at 528. This court has already determined that it is reasonably debatable that the effects of the decision to subcontract are subject to arbitration. *School Serv. Employees Union Local No. 284 v. Independent Sch. Dist. No. 88*, 459 N.W.2d 336, 339 (Minn.App. 1990), *pet. for rev. denied* (Minn. Oct. 25, 1990). If arbitrability is "reasonably debatable," the debate should be resolved in favor of arbitration. *Berthiaume*, 259 N.W.2d at 911 (legislative policy favors arbitration).

Other jurisdictions also favor arbitrability when subcontracting implicates the terms and conditions of employment. In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the United States Supreme Court held that where the arbitration clause is broad and the contract does not expressly address subcontracting, the issue is arbitrable. The Supreme Court emphasized that doubts regarding arbitrability should be resolved in favor of arbitration as long as the arbitration clause "is susceptible to an interpretation that covers the asserted dispute." *Id.* at 582–83, 80 S.Ct. at 1353.

*Local 1912, Int'l Assoc. of Machinists v. United States Potash Co.*, 270 F.2d 496 (10th Cir.1959), *cert. denied*, 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed.2d 1728 (1960), concerned a dispute over contract provisions similar to those of the present agreement. Although the contract did not address subcontracting, a federal appeals court held the issue was subject to arbitration in part because the contract contained an implied covenant of "good faith and fair dealing" and a "covenant that neither party shall do anything which will have the effect of destroying * * * the right * * * to receive the fruits of the contract." *Id.* at 498 (citations omitted).

The school district argues that its compliance with the *General Drivers* notice and willingness to negotiate provisions relieves it of liability. We disagree. Proper notification and willingness to negotiate does not excuse the employer from responsibility for a contract violation. *General Drivers*, 283 N.W.2d at 528. The school district may certainly subcontract work to private companies. But, where the school district violates the terms of an existing agreement, arbitration is proper and the arbitrator's remedy of reinstatement with back pay will be affirmed.

## DECISION

The district court properly refused to vacate the arbitration award where the determination of arbitrability was inextricably intertwined with the merits of the dispute and the school district violated the terms of the agreement.

Affirmed.

HARTEN, Judge (dissenting).

Because the practical effect of the majority holding is that a management decision to subcontract services will inevitably qualify as a grievance, I respectfully dissent.

The trial court agreed with the arbitrator that appellant's decision to subcontract is arbitrable because that decision generated a grievance within Article XIII of the collective bargaining agreement. Article XIII defines a grievance essentially as a dispute as to "the interpretation or application of the terms and conditions of employment *insofar as such matters are contained in [the agreement]*." (Emphasis added.)

There is no language in the agreement covering or limiting appellant's right to subcontract. Article IV, subdivision 4 states, "[A]ll management rights and management functions not expressly delegated in [the agreement] are reserved to the [appellant] School Board."

In my view, appellant's decision to subcontract is not meant to accommodate a grievance under the agreement. *General Drivers Union Local 346 v. Independent Sch. Dist. No. 704*, 283 N.W.2d 524, 528 (Minn.1979) indicates that the *effects* of a decision to subcontract such as severance pay and pension may be negotiated. That does not mean that the management *decision* to subcontract is either negotiable or arbitrable. *General Drivers* focuses upon the negotiability of the *effects* of a subcontracting decision, not the decision itself.

If the decision to subcontract is itself an *effect* of subcontracting within *General Drivers*, the management right to subcontract becomes illusory because it is made subject to the grievance procedure. I read the effects of subcontracting language of *General Drivers* to refer to the consequences of a subcontracting decision. This construction avoids circularity, to-wit: management reserves the right to subcontract; subcontracting involves the loss of jobs in the bargaining unit; loss of jobs automatically affects the terms and conditions of employment for employees whose jobs were lost; terms and conditions of employment are subject to grievance within the bargaining agreement; and management's reservation of the right to subcontract is nullified.

The arbitrator's decision and award, approved by the trial court, sustained the grievance upon a finding that appellant's decision to subcontract violated the agreement. It ordered appellant to reinstate the discharged employees with back wages less other earnings received, thereby nullifying appellant's decision to subcontract. I would reverse the trial court and vacate the arbitrator's decision and award.