In the Matter of Arbitration Between IN-DEPENDENT SCHOOL DISTRICT NO. 88, NEW ULM, Minnesota, petitioner, Appellant,

v.

SCHOOL SERVICE EMPLOYEES UNION LOCAL 284, Respondents.

No. C8-92-589.

Supreme Court of Minnesota.

July 16, 1993.

John J. O'Donnell, Joseph E. Flynn, St. Paul, for appellant.

Bruce P. Grostehpan, Minneapolis, for respondents.

KEITH, Chief Justice.

This case presents the issue of whether the decision to contract out is an inherent managerial right not subject to arbitration and one which management may implement unilaterally. While we concur with the school district that contracting out is an inherent managerial right, we hold that the school district still must negotiate over the effects of its decision and may not unilaterally contract out the work until impasse has been reached, particularly where, as here, the contracting out results in the elimination of the entire bargaining unit.

This case involves an agreement between the Independent School District No. 88, New Ulm (school district) and the School Service Employees Union Local 284 (union), which is the collective bargaining agent for the food services workers of the school district. The collective bargaining agreement between these parties is governed by the Public Employment Labor Relations Act (PELRA), Minn.Stat. ch. 179A (1992).

The agreement between the school district and the union was officially in effect from July 1, 1987, until June 30, 1988, but it provided that it would continue until modified pursuant to PELRA. Specifically, the duration clause of Article XV, Section 1, provided:

Section 1. *Term and Reopening Negotiations:* This Agreement shall remain in full force and effect for a period commencing on July 1, 1987 through June 30, 1988, and thereafter until modifications are made pursuant to the PELRA. If either party desires to modify or amend this agreement commencing at its expiration, it shall give written notice of such intent no later than 90 days prior to said expiration. Unless otherwise mutually agreed, the parties shall not commence negotiations more than 90 days prior to the expiration of this Agreement.

On February 18, 1988, the union gave notice of its intent to modify the agreement pursuant to this section.

Negotiations ensued, with the union proposing an 8% increase and the school district countering with a suggestion that the union reduce its starting rate for cooks, freeze other pay rates, eliminate three head cook positions, and delete all holidays. The union rejected the school district's proposal and filed for mediation.

Six mediation sessions were held between August 4, 1988, and July 6, 1989. During the mediation sessions, the union modified its proposal to ask for a two-year contract similar to one signed by the secretarial and custodial units, in which the food service workers would receive a 3.5% increase in wages in the first year and a wage freeze in the second year. The school district rejected this proposal and instead proposed that the food service workers freeze their wages, delete all holidays and vacation, and waive their rights under the comparable worth statute. Throughout negotiations, the school district advised the union that it was considering contracting out the food service operation.

Finally, on July 13, 1989, one week after the last mediation session, the School Board considered the negotiations at an

impasse [1] and awarded the contract for providing food services to a private entity. Later that month, the school district sent letters to all of the food service workers indicating that they had been discharged.

On August 4, 1989, the union filed a grievance, alleging that the food service workers had been terminated without just cause in violation of the collective bargaining agreement. The school district refused to submit this claim to arbitration, asserting that its decision to contract out was not grievable and thus not arbitrable.

The district court concurred with the school district and dismissed the union's suit. The court of appeals reversed, however, holding that it was at least "reasonably debatable" that the decision to contract out was subject to arbitration and that an arbitrator should decide the question of arbitrability. *School Serv. Employees Union Local No. 284 v. Independent Sch. Dist. No. 88*, 459 N.W.2d 336 (Minn. App.1990), *pet. for rev. denied* (Minn., Oct. 25, 1990) [hereinafter *School Serv. Employees I* ].

This matter then proceeded to arbitration, with the arbitrator awarding the food service workers reinstatement with back pay and full seniority. The district court refused to vacate the arbitrator's award. The court of appeals affirmed the arbitrator's judgment, holding that the "district court properly refused to vacate the arbitration award where the determination of arbitrability was inextricably intertwined with the merits of the dispute and the school district violated the terms of the agreement." *Independent Sch. Dist. No. 88, New Ulm, Minnesota v. School Serv. Employees Union Local 284*, 490 N.W.2d 431, 435 (Minn.App.1992) [hereinafter *School Serv. Employees II* ]. This appeal followed.

The school district asserts that its decision to contract out the food service work to a private entity is an inherent managerial right and therefore is not grievable or arbitrable. The school district contends that because the decision to contract out is not arbitrable, the arbitrator's decision must be vacated.

■ In reviewing an arbitrator's decision, the arbitrator is the final judge of both law and fact, but this court's review of the determination of arbitrability is *de novo*. *State v. Berthiaume*, 259 N.W.2d 904, 909–10 (Minn.1977). In determining whether this agreement contemplated that contracting out was subject to arbitration, we must look to the specific contract language. Article XIII defines a "grievance" subject to arbitration as follows: "A grievance shall mean an allegation by an employee resulting in a dispute or disagreement between the employee and the School District as to the interpretation or application of terms and conditions of employment insofar as such matters are contained in this Agreement." The union claims that the decision to contract out affected the "terms and conditions of employment" and was therefore arbitrable.

■ The school district contends that its decision to contract out was not arbitrable because it was an inherent managerial right under Article IV of the contract. Although there is no explicit provision in the collective bargaining agreement addressing the issue of contracting out, the school district contends that the management rights clause gives it the right to make such decisions to contract out. This clause provides, in pertinent part:

The Exclusive Representative recognizes that the School Board is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and program of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel.

\*   \*   \*   \*   \*   \*

The foregoing enumeration of Board rights and duties shall not be deemed to

---

**1.** No formal impasse had been declared by the mediator, but neither the union nor the school district had modified its most recent proposals.

exclude other inherent management rights and management functions not expressly reserved herein, and *all management rights and management functions not expressly delegated in this Agreement are reserved to the School Board.*

Article IV of the Agreement Between Independent School District No. 88 and School Service Employees Union Local 284 (emphasis added). The absence of any express delegation of contracting out in this agreement therefore indicates that the *decision* to contract out is an inherent managerial right of the school district which is not subject to arbitration or negotiation.

■ Although the *decision* to contract out may be an inherent managerial right, the *effects* of that decision may still be subject to negotiation and arbitration. In fact, both federal and state case law precedent indicate that there is a presumption in favor of arbitrability. The United States Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). The Court further explained:

> A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision. Nor is there any showing that the parties designed the phrase "strictly a function of management" to encompass any and all forms of contracting out. In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the

exclusion clause is vague and the arbitration clause quite broad.

*Id.* at 584–85, 80 S.Ct. at 1353–54.

The school district attempts to distinguish this case from the present one by asserting that the collective bargaining agreement contains a narrow arbitration clause which limits the grievance procedure to disputes over terms and conditions of employment only "insofar as such matters are contained in this Agreement." Because contracting out was not explicitly mentioned in the agreement, the school district contends that its decision to contract out is not grievable or arbitrable.

In *General Drivers Union Local 346 v. Independent Sch. Dist. No. 704*, 283 N.W.2d 524 (Minn.1979), this court held, under a similar management rights clause, that the effects of such a decision to contract out are subject to mandatory negotiation under PELRA. The management rights clause in the *General Drivers* case gave the school district the "sole right to operate the school system," and it provided that "all management rights repose in it, except as expressly modified by this Contract and applicable laws." *Id.* at 527. In evaluating this clause, we determined that such subcontracting decisions were subject to arbitration and negotiation:

> The Minnesota School Board Association, amicus curiae, contends that contracting out is an inherent managerial decision, not subject to mandatory negotiation under PELRA. We are persuaded, however, that whether or not an employee's job will be terminated so that the same function can be performed by a non-unit employee is a subject contemplated for negotiation as a term and condition of employment.

*Id.* at 527 n. 1. In determining that contracting out is subject to mandatory negotiation under PELRA, we rejected the claim that "once a decision to contract out is made any negotiation is futile." *Id.* at 528. Instead, we required ongoing negotiations regarding the effects of the decision to contract out: "Even if the school board decides to abide by its decision to contract

out, the effects of that decision, including such topics as severance pay and pension, may well be proper subjects for negotiation." *Id.*

The United States Supreme Court also has noted that when an employer contracts out with non-union employees to do the same work as current employees under similar conditions of employment, the employer must bargain with the union over such an action. The Court has stated:

> While "the [National Labor Relations] Act does not encourage a party to engage in fruitless marathon discussions at the expense of frank statement and support of his position," it at least demands that the issue be submitted to the mediatory influence of collective negotiations. As the Court of Appeals pointed out, "[i]t is not necessary that it be likely or probable that the union will yield or supply a feasible solution but rather that the union be afforded an opportunity to meet management's legitimate complaints that its maintenance was unduly costly."

*Fibreboard Paper Prods. Corp. v. N.L.R.B.*, 379 U.S. 203, 214, 85 S.Ct. 398, 404, 13 L.Ed.2d 233 (1964) (citation omitted). Justice Stewart, in his concurring opinion, further explained the Court's rationale and expanded upon the types of subcontracting decisions which are subject to bargaining:

> The question remains whether this particular kind of subcontracting decision comes within the employer's duty to bargain. On the facts of this case, I join the Court's judgment, because all that is involved is the substitution of one group of workers for another to perform the same task in the same plant under the ultimate control of the same employer. The question whether the employer may discharge one group of workers and substitute another for them is closely analogous to many other situations within the traditional framework of collective bargaining. * * *
>
> Analytically, this case is not far from that which would be presented if the employer had merely discharged all its employees and replaced them with other workers willing to work on the same job

in the same plant without the various fringe benefits so costly to the company. While such a situation might well be considered a * * * violation upon a finding that the employer discriminated against the discharged employees because of their union affiliation, it would be equally possible to regard the employer's action as a unilateral act frustrating negotiation on the underlying questions of work scheduling and remuneration, and so an evasion of its duty to bargain on these questions, which are concededly subject to compulsory collective bargaining. Similarly, had the employer in this case chosen to bargain with the union about the proposed subcontract, negotiations would have inevitably turned to the underlying questions of cost, which prompted the subcontracting. Insofar as the employer frustrated collective bargaining with respect to these concededly bargaining issues by its unilateral act of subcontracting this work, it can properly be found to have violated its statutory duty under [the National Labor Relations Act].

> This kind of subcontracting falls short of such larger entrepreneurial questions as what shall be produced, how capital shall be invested in fixed assets, or what the basic scope of the enterprise shall be. In my view, the Court's decision in this case has nothing to do with whether any aspects of those larger issues could under any circumstances be considered subjects of compulsory collective bargaining under the present law.

*Id.* at 224–25, 85 S.Ct. at 410–11 (Stewart. J., concurring) (footnotes omitted). Thus, the school district was required to negotiate with the union over the effects of its decision to subcontract. Although the school district claims that it was "willing" to negotiate the effects of the decision to contract out, this is not sufficient to meet the requirements of *Fibreboard* and *General Drivers*. Here, the school district made no attempt to negotiate such issues as severance pay and pension, and, therefore, its actions violated the mandatory ne-

gotiation requirement set forth in *General Drivers*.

■ The school district contends, nevertheless, that it met any negotiation requirements by participating in six mediation sessions. However, even if the district's actions could somehow be construed to meet the negotiation requirements set forth in *General Drivers*, the school district cannot hide behind the shield of an "inherent managerial right" to protect itself from an explicit contract violation. As the court of appeals noted: "The school district may certainly subcontract work to private companies. But, where the school district violates the terms of an existing agreement, arbitration is proper and the arbitrator's remedy of reinstatement with back pay will be affirmed." *School Serv. Employees II*, 490 N.W.2d at 435.

In this case, all the evidence indicates that the contract between the parties was still in effect at the time the school district contracted out the work. Although the contract between the parties extended only until June 30, 1988, a "contract in effect" clause provided that it would "remain in full force and effect * * * until modifications are made pursuant to the PELRA." This language is consistent with PELRA's statutory definition of a "contract in effect," which provides: "During the period after contract expiration and prior to the date when the right to strike matures, and for additional time if the parties agree, the terms of an existing contract shall continue in effect and shall be enforceable upon both parties." Minn.Stat. § 179A.20, subd. 6 (1992). In this case, no modifications had been made pursuant to PELRA, and the agreement had not expired by force of law. *See* Minn.Stat. § 179A.20, subd. 3 (1992) (providing that, under PELRA, the duration of a collective bargaining agreement may not exceed three years). Thus, the contract remained in effect at the time the school district contracted out the food service work to a private enterprise, particularly where, as here, no impasse had been declared at the time the contracting out occurred.

The agreement between these parties also contained a recognition clause which identified the union as the exclusive representative of the parties. Specifically, the recognition clause in Article II of the agreement provides:

In accordance with the P.E.L.R.A., the School Board recognizes the School Service Employees Union Local 284, AFL and CIO as the Exclusive Representative for all such food service and laundry employees employed by the School Board of Independent School District No. 88, which Exclusive Representative, shall have those rights and duties as prescribed by the P.E.L.R.A. and as described in the provisions of this Agreement.

Thus, the recognition clause indicates that these parties were contractually bound as long as the contract remained in effect, and the district's unilateral decision to contract out the work while negotiations were ongoing therefore violated the recognition clause of this agreement. While the duty to bargain arises out of PELRA, it is reinforced by the agreement's "contract in effect" and "recognition" clauses. The school district therefore could not unilaterally contract out the work in violation of a continuing agreement. As noted by Justice Stewart in *Fibreboard*, because the agreement continued in effect at the time of the subcontracting decision, "[a]nalytically, this case is not far from that which would be presented if the employer had merely discharged all its employees and replaced them with other workers willing to work on the same job in the same plant without the various fringe benefits so costly to the company." 379 U.S. at 224 (Stewart, J., concurring).

While the school district would have had the right to unilaterally contract out the work if the agreement had been terminated by a formal declaration of impasse, no formal impasse was ever declared by the mediator in this case. *See* Minn.Stat. § 179A.18, subd. 2 (1992). The school district never requested the mediator to determine that an impasse had been reached, and PELRA provides that "[a]ll parties shall respond to the summons of the com-

missioner for conferences and shall continue in conference until excused by the commissioner." Minn.Stat. § 179A.15 (1992). Because the commissioner had not excused the parties and impasse had not been declared, the contract continued in effect, and the school district was constrained from unilaterally eliminating the entire bargaining unit. As one commentator has noted:

> In the absence of contractual language relating to contracting out of work, the general arbitration rule is that management has the right to contract out work as long as the action is performed in good faith, it represents a reasonable business decision, it does not result in subversion of the labor agreement, and it does not have the effect of seriously weakening the bargaining unit or important parts of it.

Elkouri and Elkouri, *How Arbitration Works* 540 (4th ed. 1985) (citations omitted).

Because the school district's actions effectively eliminated the entire bargaining unit while the contract remained in effect, the district's actions amounted to a "subversion of the labor agreement" in violation of the "recognition" and "contract in effect" clauses. We therefore uphold the arbitrator's award and conclude that the school district violated the terms of the collective bargaining agreement.

Affirmed.

GARDEBRING, J., took no part in the consideration or decision of this case.